MASSENBURG et al. v. DENISON et al.[1]

(Circuit Court of Appeals, Fifth Circuit. January 7, 1896.)

No. 367.

**1. REAL ESTATE—TITLE DERIVED UNDER LEGAL PROCEEDINGS — PRESUMPTION OF REGULARITY.**

In 1838, one H., administrator of D., obtained from the land commissioners of Red River county, Tex., a certificate that D. was entitled to a league and labor of land, upon condition of paying for the same at certain rates. Shortly afterwards, H., as administrator, assigned to one S. two-thirds of the land called for by the certificate, by an indorsement on the back of the certificate, reciting that the sale was made by virtue of a decree of the probate court. The certificate, so indorsed, was delivered to S., and thereafter, by various transfers regular in form, came, in 1874, to the hands of one M., who caused the two-thirds interest in the certificate to be located on public lands of Texas, a patent therefor being issued to "D. (heirs) deceased, their heirs and assigns," and thereafter M. and his grantees continued in possession of the land, improving and paying taxes on the same, till 1893, when certain heirs of D. brought an action against M. and his grantees to recover the land. M. and his grantees filed a bill to restrain the prosecution of such action, and assert their equitable title to the land, setting up the facts as aforesaid, and averring, upon belief, that the sale by H. as administrator was made by

[1] Rehearing denied February 17, 1896.

authority of the county court of Red River county. To this bill D.'s heirs demurred, on the ground, among others, that it did not appear by the bill that H., as administrator of D., was authorized to sell the certificate. *Held* that, in view of the long time elapsed, and the possession of the certificate and of the land located under it by S. and his assigns, the presumption was in favor of the regularity of the transfer to S., and that the bill stated at least a prima facie case, and was not demurrable.

2. EQUITY—LACHES—TITLE TO LAND.

Where a party is in possession of land, he may wait until his title and possession are attacked before setting up equitable demands without being chargeable with laches.

3. SAME—REMEDY AT LAW.

Where a party is possessed of a full equitable title to lands, he may resort to a court of equity to protect himself, although, perhaps, he might defend in an action at law by asserting title by prescription.

Appeal from the Circuit Court of the United States for the Southern District of Texas.

The appellants, complainants below, filed their bill in the circuit court, wherein, after the introductory part, they allege:

"That on April 7, 1893, the defendants brought an action at law in this honorable court, on the law side thereof, against your orators, and also Mrs. A. V. Morris and her husband, W. C. Morris, in form of an action of trespass to try title, which action is styled Geo. W. Denison et al. vs. W. E. Massenburg et al., and numbered 1,581 on the law docket of this court, and said action is still pending therein and undecided. That in said action said Mrs. A. V. Morris and her husband, W. C. Morris, have filed a disclaimer of all right, title, and interest in the land sued for therein. That said action is brought for the recovery of the title and possession of the following described tract of land, to wit: 17,333,333 square varas of land, lying in the county of Stephens and state of Texas, known as 'Survey No. 115,' on the head waters of Palo Pinto creek, about 30 miles southwest from the town of Palo Pinto, beginning 1,392 varas north of the N. E. corner of a survey of F. W. Homes, a stake (a live oak bears north, 82 degrees east, 23 varas; do., north, 71 degrees east, 17 varas); thence north, 4,158 varas, to a stake on the S. B. line of the T. & P. R. R. reservation, marked 'T5883W' (bearing trees marked the same); thence north, 84 degrees east, with said reservation line, 3,995 varas, to a stake in open prairie; thence south, 4,576 varas, to a mound of stone, 681 varas east of the N. E. corner of Samuel Smith's survey; thence west, at 681 varas pass said Smith's N. E. corner, 3,973 varas in all, to the place of beginning,—and conveyed to the heirs of Lewis C. Denison. That said land exceeds in value the sum of $5,000. That your orators, as they are advised, are the equitable owners of said property, and their title thereto is equitable, and their defense to said action is equitable, and such as cannot be presented as a defense in said action at law, and such as can only be presented and considered by the court of equity, as hereinafter shown. In 1838 the following land certificate was legally issued and delivered to R. M. Hopkins, by the board of land commissioners of Red River county, Texas, viz.:

" 'No. 452. This is to certify that Richard M. Hopkins, administrator of the estate of Lewis C. Denison, deceased, appeared before the board of land commissioners for the county of Red River, and proved according to law. * * * Deceased arrived in this country in the year 1835, and, being a married man, is entitled to one league and labor upon condition of paying at the rate of $3.50 for every labor of irrigable land and $2.50 for every labor of arable land, and $1.20 for every labor of pasture land secured to him for this certificate.

" 'Given under our hands this 3rd day of March, 1838.

" 'M. W. Mathius, P. B. L. C.
" 'James Lattimer.
" 'B. Gooch, Clk.'

"Said Hopkins was at said date, and at said dates hereinafter named, the duly appointed, qualified, and acting administrator of said Lewis C. Denison,

having been so appointed by the county court of Red River county, Texas. Said estate was small, and in debt, and the property belonging to it did not amount to $500 in value. On February 7, 1839, said R. M. Hopkins wrote on said certificate the following indorsement, viz.:

"Republic of Texas, Red River County.

" 'Know all men by these presents, that I, Richard M. Hopkins, administrator, by virtue of a decree of the honorable probate court for the county of Red River, do hereby assign and set over unto Henry Smith two-thirds of the land called for by the within certificate.

" 'Witness my hand and seal, this, the 7th day of February, 1839.

" '[Seal.]                    R. M. Hopkins, Administrator.'

"Said Hopkins on same day sold and delivered said certificate, with said indorsement, to Henry Smith. On November 27, 1858, said Hopkins duly acknowledged the execution of said indorsement before John M. Bivens, clerk county court of Red River county, Texas. Your orators believe and aver that said sale of said certificate was made under the orders of said county court of Red River county. Said certificate, and indorsement thereon, and proof of acknowledgment, was duly filed for record, and recorded in the office of county clerk of Red River county, in Record of Deeds, on February 14, 1859. Prior to September 6, 1859, said Henry Smith died, and Joseph D. Mason was duly appointed his administrator by the county court of Red River county, and duly qualified; and under the proper orders of that court, on said day, said administrator duly sold said two-thirds of said certificate to S. H. Perkey for $250, and made him a bill of sale for same, and delivered said certificate and indorsement and proof to said Perkey. Prior to August 19, 1870, Perkey died, leaving a will, which was before that date probated in the proper court in and for Bowie county, Texas. By this will S. B. Perkey was named as executor of said S. H. Perkey, and was duly appointed and qualified as such in said court; and by this will said executor was authorized to sell and convey said two-thirds of said certificate. On August 19, 1870, said executor, for valuable consideration, sold and conveyed said interest in said certificate to W. E. Massenburg, and delivered said certificate and indorsement thereon to said Massenburg, and executed and acknowledged and delivered to Massenburg a proper bill of sale for same. All of said transfers were made before said certificate was located on any land, and while same was personal property. Prior to June 6, 1872, all of the foregoing certificates, indorsements, orders of court, bills of sale, transfers, and papers were duly recorded in the Records of Deeds of Bowie county, Texas. Prior to July 20, 1874, W. E. Massenburg, believing himself the owner of said interest in said certificate, and J. M. Greenfield also believing, said Massenburg contracted with said Greenfield to locate said interest of said certificate on the public unappropriated domain of Texas. On July 20, 1874, said Greenfield caused said interest in said certificate to be legally located on land in controversy by the proper surveyor, and had the field notes of same recorded in Stephens county, and had said certificates and field notes legally returned to and filed in the general land office of Texas in the time required by law, and said Massenburg and Greenfield paid all the fees for all this work, and said certificate was filed about said date in said land office, and has remained there ever since. Prior to such filing in said land office, said certificate has always been in possession of said Massenburg and his vendors. On the 16th day of April, 1875, a patent for the land in controversy was legally issued for the land in controversy by the state of Texas, the granting clause in which is as follows: 'Do by these presents grant to Lewis C. Denison (heirs) deceased, their heirs and assigns, forever.' Said patent recited that it is issued 'by virtue of H. R. Cert. No. 452, issued by the board of land commissioners of Red River county, March 3, 1838.' Said patent was on said day duly delivered to said W. E. Massenburg, and has been in his possession ever since. All of the foregoing papers were duly recorded in Stephens county, on May 9, 1877, and said patent was duly recorded in Stephens county, where said land lies, on August 13, 1879. Said Massenburg paid all the fees of the general land office for the above.

"In pursuance of his contract with Greenfield, said W. E. Massenburg, on

January 16, 1880, executed and properly acknowledged and delivered to said J. M. Greenfield a warranty deed, therein conveying to Greenfield an undivided interest of 800 acres in said land in payment for locating said certificate, etc., as aforesaid, said payment being reasonable, and such as was customary for such services. Said deed was only recorded in Stephens county on February 10, 1880. On August 4, 1879, in consideration of $800 paid by Tilson, said W. E. Massenburg executed, acknowledged, and delivered to W. H. Tilson a warranty deed for an undivided interest of 800 acres of this land, which was duly recorded in Stephens county on August 13, 1879. On August 7, 1879, said W. H. Tilson, for valuable consideration, conveyed by warranty deed said undivided 800 acres to James Roorck, which deed was at said date duly recorded in Stephens county. On December 6, 1882, said James Roorck, by warranty deed, for valuable consideration, conveyed said interest of 800 acres to W. R. Lewis, which deed was at said date duly recorded in Stephens county. On February 10, 1883, said W. R. Lewis, in consideration of $600 paid, by warranty deed conveyed said interest of 800 acres to R. M. Fancher, which deed was at said date duly recorded in Stephens county. Prior to August 11, 1884, R. M. Fancher died, in Limestone county, leaving a will which was on said date duly probated by the proper court of said county. By this will Annie V. Fancher was appointed as his executrix without bond, with authority to convey any of his property, and he devises all of his property to her, including his interest in the land in controversy. She duly qualified as executrix. On October 24, 1887, said Annie V. Fancher, in her own right, and as said executrix, for valuable consideration, and by warranty deed, conveyed to Daisy L. Fancher said interest of 800 acres in this land, which deed was at said date duly recorded in Stephens county. That from the date of the sale of said two-thirds of said certificate by R. M. Hopkins, administrator, in 1839, up to the time said certificate was located on the land in controversy in 1874, said certificate was in possession of Henry Smith, his administrator, and said Perkey and his executor, and said Massenburg; and prior to said sale it was in possession of said R. M. Hopkins, and was so at time of said sale; and after its location it was filed in the general land office of Texas by said Massenburg, as required by law, where it has ever since remained. That said Massenburg had said certificate located on said land, and employed said Greenfield for that purpose, and conveyed to him said interest in said land for said services as aforesaid. That said Massenburg paid all expenses of locating said certificate and returning the field notes thereof, and paid all the general land office fees for issuing patent to said land; and the said patent from the state was issued and delivered to him, and has ever since been in his possession as aforesaid. That ever since said certificate was located on said land, said Massenburg and his vendees have paid all the taxes due on said land, and have improved and used and treated said land as their own, and openly and notoriously asserted their title thereto, and all their deeds, bills of sale, and muniments of title for said certificate and said land have been duly recorded in Stephens county since May, 1877. That the defendants have never paid anything towards locating or obtaining a patent for said land, nor have they ever paid any taxes on said land, nor have they ever asserted any right or title thereto until the filing of said action at law. That said Massenburg and his vendees bought and paid valuable consideration for their title to said certificate and said land in good faith, and without notice that the defendants had or claimed any interest or title in said land.

"Your orators have paid out about the sum of $1,000 for the purpose of locating said certificate on said land, returning the field notes to the general land office of Texas, and obtaining the patent for said land, and in the payment of the taxes legally assessed and due on said land as above stated. That the usual and reasonable value of your orator's services in locating said land, returning the field notes, and obtaining patent, and paying taxes on same, was and is one-half of the land so patented, and said services were and are reasonably worth $3,000. That defendants stood by and allowed your orators to expend this money and perform these services, believing that they had and would get a good title to said certificate and said land, and defendants now adopt and approve your orators' services herein, and are seeking

to recover the land secured by said moneys and services; but they refuse to repay 'said moneys to your orators, or to pay your orators for their services. That your ·orators· are advised and believe that it would be against equity and good conscience for the defendants to thus recover said land from your orators without ·repaying said moneys, and paying for said services; and your orators ask that, in the event that defendants are decreed to be the owners of said land, they be required to pay to your orators said moneys and the value of said services before they take possession of said land. That defendants and· those under whom they claim have never resided in the state of Texas, but they are now and have always been nonresidents of said state, and have never been in said state. That your orators and those under whom they claim title have had peaceable and adverse possession, under title and color of title, in good faith, from and under the state of Texas, of said lands and tenements above described, for more than 3 years next before the commencement of said action at law (No. 1,581) of Geo. W. Denison et al. vs. W. E. Massenburg et al. That your orators and those under whom they claim title, claiming said land under deeds duly registered, have had peaceable and adverse possession of said land, cultivating, using, and enjoying the same, and paying all taxes thereon for a period of more than 5 years next before the commencement of said action at law (No. 1,581) of Geo. W. Denison et al. vs. W. E. Massenburg ·et al. That your orators and those under whom they claim title, claiming to have good and perfect title to the above-described land, have had and held peaceable and adverse possession of same, cultivating, using, and enjoying the same,. for a period of more than 10 years next before the commencement of said action at law (No. 1,581) of Geo. W. Denison et al. vs. W. E. Massenburg et al. That such possession was taken and held under written memoranda of title, other than deeds, which fixed the boundaries of your orators' claim, ·as above set forth in the description of said land, and were duly registered, and your orators' peaceable possession should be construed to be coextensive with said boundaries set forth in said description of said land."

The bill concluded with a prayer that the defendants should be required to answer the bill, but not under oath, for an injunction restraining the action at law, and, upon final hearing, for orators to be decreed the owners of the tract of land in controversy, and that the title of the defendants be canceled· and annulled.

The defendants appeared by counsel, and demurred to the complainants' bill, as follows:

"First. That there is no equity in the same, and that said bill sets forth no facts which would entitle complainants to the relief prayed for, or any part of the same.

"Second. And, for special cause of demurrer to said bill, these defendants say that it appears by said bill that plaintiffs' alleged title to the land in controversy is derived through and by virtue of a sale of the certificate by one R. M. Hopkins as administrator of the estate of Lewis C. Denison, but it nowhere appears in said bill by what court said Hopkins was .appointed such administrator, or that he was clothed by any court with authority to sell said certificate, or that the alleged sale was confirmed by any court; nor does said bill disclose or set forth any fact which would authorize said sale or conveyance, or entitle the purchaser, Henry Smith, to a conveyance of said certificate or vest in said Henry Smith any title to the same.

"Third. And, for further special cause of demurrer to said bill, these defendants say that the averment in the same that W. E. Massenburg caused two-thirds of the certificate therein mentioned to be located, had the field notes returned to the general land office, paid all the charges therefor, procured a patent to issue for the land in controversy. and paid all the charges therefor, and caused said patent to be recorded, or that he employed J. M. Greenfield to locate said certificate, and that said Greenfield performed said work, and that said Massenburg conveyed to him 800 acres of said land, is insufficient to entitle said Massenburg or said Greenfield to any interest in said land, or to entitle them, or either of them, or their vendees, to any cause of action against these defendants, inasmuch as no authority from these defendants, or either of them, to perform the acts, is stated.

"Fourth. And, for further special cause of demurrer to said bill, these defendants say that the averments in the same, that plaintiffs have paid out the sum of about $1,000 for the purpose of locating, and other acts averred in relation to the location and patenting of the same, and paying taxes on the land so located, do not constitute an equitable claim or demand in their favor against these defendants, or entitle them to repayment of the money alleged to have been expended, or the value of services alleged therein to have been performed, in the absence of any averment that said money was expended or said services performed by authority, express or implied, from these defendants, to expend said money or to perform said services.

"Fifth. And, for further special cause of demurrer to said bill, these defendants say that it appears by said bill that plaintiffs have an adequate remedy at law to enforce all the rights set up in said bill, in that they aver that they have had peaceable and adverse possession of the land in controversy, under title and color of title, in good faith, from and under the state of Texas, for more than 3 years next before the commencement of defendants' action at law, which they seek to enjoin, and that they, and those under whom they claim, claiming said lands under deeds duly registered, have had peaceable and adverse possession of said land, cultivating and enjoying the same, and paying all taxes due thereon, for a period of more than 5 years next before the commencement of said action at law, and that they and those under whom they claim, claiming good and perfect title, have had peaceable and adverse possession of said land, cultivating, using, and enjoying the same for a period of more than 10 years next before the commencement of said action at law, holding said land under written memoranda of title other than deeds, which fixed the boundary of their claim coextensive with the description of said land, and have therefore a legal title to said land, by limitation, under the laws of the state of Texas.

"Sixth. And, for further special cause of demurrer, these defendants say that it appears, by plaintiffs' own showing by said bill, that the land in controversy was patented to the heirs of Lewis C. Denison on the 16th day of April, 1875, more than 19 years prior to the filing of said bill, and that their right of action, if any they had, accrued at said date, and that they have been guilty of great laches in the enforcement of their rights, if any they ever had, and said bill sets forth no facts which would in equity excuse said laches, and that their claim to said land, as set up in said bill, is a stale demand.

"Seventh. And, for further special cause of demurrer to said bill, these defendants say that, by plaintiffs' own showing by said bill, it appears that the land in controversy was patented to the heirs of Lewis C. Denison more than 10 years prior to the filing of said bill, and that their right of action, if any they had, accrued to them more than 10 years prior to the filing of the same, and is barred by the statute of limitations of the state of Texas in such cases made and provided.

"Eighth. And, for further special cause of demurrer to said bill, these defendants say that it appears by said bill that all of the moneys alleged to have been expended, and all of the services performed by them, in relation to said certificate, were expended and performed more than 19 years prior to the filing of said bill, and that they have been guilty of great laches in enforcing their rights to payment or reimbursement, if any they ever had, and aver no facts which amount to a reasonable excuse for such laches, and that by their own showing their said claim is a stale demand, and that the same is also barred by the statute of limitations of the state of Texas in such cases made and provided."

On the hearing all the demurrers to the bill were sustained, and the bill dismissed. The plaintiffs below appeal to this court, and assign as errors the rules on demurrer.

John M. Avery, for appellants.

Robert G. West and James B. Goff, for appellees.

Before PARDEE, Circuit Judge, and BOARMAN and SPEER, District Judges.

PARDEE, Circuit Judge (after stating the facts as above). The question on this appeal is whether the complainants below (appellants here) show in their bill an equitable title to the lands in controversy which is not available to them as a defense to the action of trespass to try title pending on the law side of the court. The answer to this question depends upon whether the complainant Massenburg was the owner of the two-thirds interest in the land certificate upon which the patent to the heirs of Denison was issued by the state of Texas; for it cannot be disputed that, if Massenburg owned the two-thirds interest in the certificate, he became the equitable owner of the land located thereunder when the patent issued (see Abernathy v. Stone, 81 Tex. 430–434, 16 S. W. 1102, and cases cited); and, as the transfers of the two-thirds interest in the certificate from Henry Smith to Massenburg are undisputed, the question may be further narrowed to this: What title to the two-thirds interest in the certificate did Henry Smith obtain by the sale, transfer, and assignment to him by Richard Hopkins, administrator of the estate of Lewis C. Denison?

The bill alleges, and the demurrers admit: That in 1838 Richard M. Hopkins was the duly appointed, qualified, and acting administrator of the estate of Lewis C. Denison, deceased, having been so appointed by the county court of Red River county, Tex. That the said estate was small, and in debt, and the property belonging to it did not amount to $500 in value. That the said Richard M. Hopkins, administrator, had obtained from the board of public land commissioners, and held as administrator, as aforesaid, a certificate for a league and labor of land, based upon the condition and services of Lewis Denison in his lifetime, which was entitled to be located on the public domain of Texas; that on February 7, 1839, the said Hopkins, administrator, sold and transferred two-thirds of said certificate to Henry Smith. That the following assignment was indorsed thereon:

"Republic of Texas, Red River County.

"Know all men by these presents, that I, Richard M. Hopkins, administrator, by virtue of a decree of the honorable probate court for the county of Red River, do hereby assign and set over unto Henry Smith two-thirds of the land called for by the within certificate.

"Witness my hand and seal, this, the 7th day of February, 1839.
"[Seal.]                                R. M. Hopkins, Administrator."

That on November 27, 1858, said Hopkins duly acknowledged the execution of said indorsement before the clerk of the county court of Red River county, Tex., and that said certificate, with indorsement thereon, and with proof of acknowledgment of the same, was duly filed for record, and recorded in the office of the county clerk of Red River county in the Record of Deeds of February 14, 1859. The averments on this subject conclude with the following:

"Your orators believe and aver that said sale of said certificate was made under the orders of said county court of Red River county."

The bill further shows that the possession of the land certificate passed to Henry Smith, and through him to complainant Massenburg, who caused the same to be located on the lands in controversy,

the lands to be surveyed, field notes to be properly returned, and the patent to issue, paying all the expenses in the premises; and, that the patent was delivered to Massenburg, and, since, he and his grantees have occupied and possessed the land, cultivating and improving the same, and paying all taxes thereon.

These admitted facts are consistent only with a valid sale and transfer of a two-thirds interest in the land certificate in question to Henry Smith, as claimed in the bill; and, when considered in connection with the time elapsed, and the fact that, under the laws in force at the time, small estates, under $500 in value, like that of Lewis C. Denison, were administered in a summary manner, it appears to this court that the bill shows a prima facie case, at least, in favor of the validity of the transfer in question. In connection with these averments of transfer, made many years ago, under alleged orders of court, Baker v. Coe, 20 Tex. 436, Gibson v. Foster, 2 La. Ann. 503, and Moore v. Green, 19 How. 69, are instructive. In the latter case, which involved a sale by an administrator, in which no order of sale or the confirmation of sale was alleged, and for that reason the sale was claimed to be void, the court says:

"The complainants' counsel seem to suppose that, as the defendants, in their answer, admit the property, at least in part, was originally acquired under sale of Manton's administrator, they are bound to show the proceedings were not only conformable to law, but they must go further, and prove the debts for which it was sold were due and owing by the deceased. So far from this being the legal rule, under the circumstances of this case, the presumptions are in favor of the present occupants, and the complainants must show that the administrator's sale was illegal and void. After an adverse possession of more than 80 years, when the facts have passed from the memory, and, as in this case, the papers are not to be found in the probate court, no court can require of the defendants proof in regard to said sale."

The view we take of this branch of the case disposes of the first, fourth, and eighth assignments of error, and, we think, renders unnecessary any decision upon the other assignments. We, however, take occasion to say that the amounts expended by Massenburg in procuring the location and survey of the land, and in procuring a patent therefor, and in paying the taxes thereon, are proper matters in determining how far he and his co-complainants have been in good faith in the transaction in question; that where a party is in possession of land he may wait until his title and possession are attacked before setting up equitable demands, and this without being chargeable with laches; and that, where a party is possessed of a full equitable title to lands, he may resort to a court of equity to protect himself, although, perhaps, he might defend in an action at law by asserting title by prescription.

The decree of the circuit court is reversed, and the cause remanded, with instructions to overrule the demurrers to complainants' bill, and thereafter proceed as equity requires.