Decided 9 July, 1900.

## STATE *v.* BLIZE.

[ 61 Pac. 735.]

EXECUTED CONTRACTS—EFFECT OF FRAUD.

1. Where a contract has been executed between competent parties, founded on a valuable consideration, and not legally objectionable or inherently wrong, it is valid and binding between the parties, regardless of fraud practised in securing its execution.

RESCISSION—RETURN OF CONSIDERATION.

2. A party to a contract cannot rescind it while retaining benefits received under it.

VALIDITY OF ACTS DONE UNDER AN UNCONSTITUTIONAL LAW.

3. An act done in pursuance of a statute apparently legal must be considered, in a suit between the immediate parties, as having been lawfully done, though subsequently the statute is declared void.

QUIETING TITLE—WAIVING OBJECTION TO JURISDICTION.

4. In suits to determine adverse interests to realty the objection to the juris-
diction because the defendant is in possession must be taken by a proper plea, or
it will not be considered; particularly is this true where the defendant asks
affirmative equitable relief: *O'Hara* v. *Parker*, 27 Or. 156, followed.

From Union : ROBERT EAKIN, Judge.

This is a suit by the State of Oregon to determine an
adverse claim to real estate. The complaint alleges that
the state is the owner in fee and in possession by its ten-
ant, Oliver, of the land in controversy ; that defendants,
and each of them, claim an interest or estate therein ad-
verse to the plaintiffs, whereupon it prays that each of
them be required to set forth by answer the nature and
character of his interest or estate, so that its validity may
be adjudged. The defendants Hutchinson Brothers, who
alone answered, deny the state's title and possession, and,
for an affirmative defense, aver that in 1893 the state, by
its authorized agents, the Governor, Secretary of State,
and Treasurer, falsely and fraudulently agreed with the
defendants that, if they would execute to it a good and
sufficient deed to the land described in their answer, it
would within eighteen months thereafter erect thereon,
and upon the other land mentioned and described in the
complaint, buildings and improvements for public pur-
poses at a cost and value of not less than $165,000 ; that
it was expressly agreed at the time that the whole of the
land so described should be used and occupied for public
purposes only, and that until the state fully performed
its part of the contract the defendants were to remain in
the exclusive possession of the premises as the owners
thereof ; that, if it should fail or refuse to use the land
for the purposes indicated, the title thereto should re-
main in the defendants, and any deed executed by them
should be void and of no effect ; that the performance of
such agreement and contract by the state was the only

and sole consideration for the transfer; that it has wholly failed and refused to comply with its. agreement or perform any part thereof, or pay defendants any consideration for the land; that, if the state had performed its agreement, the defendants would have been benefited, and the value of their other property increased and enhanced, in the sum of not less than $10,000, and that they are damaged by its failure to perform its agreement in such sum; that it was further understood that, if the defendants would execute to the state a deed for the land, they would receive therefor, in addition to the performance of such contract and all other considerations, the sum of $1,400, no part of which has ever been paid to these defendants, or either of them, and that they have never received any consideration from the state or any one for such lands; that the market value thereof was at the time of making the contract, and ever since has been, $60 per acre; and that the defendants would not have sold the same for any other purpose than to be used as a branch insane asylum, as represented by the agents of the state.

For a further and separate defense they aver that the state should be estopped from asserting title or right of possession to any of the lands described in their answer, for the reason that they were purchased under and by virtue of an act of the legislature entitled "An act to provide for the location and construction of a branch insane asylum in the eastern portion of Oregon, and appropriating money therefor," filed in the office of the Secretary of State February 21, 1893, which was subsequently held to be unconstitutional and void, whereupon the defendants demand that a decree be entered declaring that they are the owners in fee of the lands described in their answer, and that the state take nothing by the alleged deed from them; that it be forever barred from asserting

any claim to such lands, or any part thereof, by virtue of such deed; and that they have and recover of and from the state the sum of $10,000,—and for such other and further relief as in equity and good conscience may appear just and meet. The reply puts in issue the affirmative allegations of the answer, and pleads as an estoppel a conveyance by the defendants of the land in controversy to the state on the seventeenth day of November, 1894, for the consideration of $5,600, which was then and there paid to and received by them, and which they have ever since retained. Upon the issues thus joined the suit went to trial before the court, and the defendants offered evidence tending to show that at the commencement of the suit the state was not in possession of the land in controversy. The court refused to permit the introduction of such evidence on the ground that the defendants, by their answer, had waived that issue. A decree was rendered in favor of the plaintiffs, from which the defendants appeal.                                      Affirmed.

For appellants there was a brief over the names of *Chas. H. Finn* and *Leroy Lomax*, with an oral argument by *Mr. Finn.*

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford.*

Mr. Chief Justice Bean, after making the foregoing statement of the facts, delivered the opinion.

It is uncontroverted that in 1894 the board of commissioners of public buildings purchased from the defendants Hutchinson Brothers 140 acres of land in Union County for a branch insane asylum, under an act of the legislature approved February 21, 1893 (Laws 1893, p. 136), and paid therefor the sum of $5,600. The land

was conveyed to the state by warranty deed, regularly executed and delivered, but, by agreement, the defendants were permitted to occupy it during the seasons of 1895 and 1896, and thereafter continued to so occupy and farm the same up to the time it was leased by the state to Oliver, in the spring of 1899, and for the purposes of this suit it must be assumed that at the commencement thereof they were so in possession. Upon these facts the only questions presented for our determination are (1) whether the state had legal capacity to take title to the real estate in question at the time the deed from the defendants was executed and delivered to it; and (2) whether the court below had jurisdiction of the controversy between the parties.

1. The questions of fraud and misrepresentation, and of the alleged failure of the state to comply with its agreement to use the land for public purposes only, are wholly immaterial in this suit. An executed contract between competent parties, founded on a valuable consideration, not immoral or prohibited by statute or against public policy, is not void, as between the parties, however fraudulently obtained; nor will a conveyance of real estate be avoided by the subsequent failure of the grantee to pay the consideration as agreed upon.

2. And, moreover, it is elementary law that a party cannot disaffirm a contract and retain the fruits thereof. If he desires to rescind, he must return or offer to return whatever he has received under it: 1 Beach, Mod. Eq. Jur. § 76; *Frink* v. *Thomas*, 20 Or. 265 (12 L. R. A. 239, 25 Pac. 717); *Scott* v. *Walton*, 32 Or. 460 (52 Pac. 180); *Vaughn* v. *Smith*, 34 Or. 54 (55 Pac. 99); *Och* v. *Mo. K. & T. Ry. Co.* 130 Mo. 27 (31 S. W. 962, 36 L. R. A. 442). No offer has ever been made by the defendants to return the money received by them from the state for the land in question; nor, so far as this record discloses, have

they ever expressed a willingness to do so ; hence they are not entitled to relief in this suit, even if the deed be voidable. They are compelled to rely upon the naked legal proposition that the deed to the state is absolutely null and void because the state had no capacity to take the title—in short, that there was no conveyance, because there was no grantee, and so the title never in fact passed out of them. But there is no merit in this contention. That the state can take and hold title to real estate is unquestioned, and if, in a given instance, a conveyance is made to it for an unauthorized purpose, it is not void, however it may be regarded in a proceeding instituted for the purpose of canceling and setting it aside. If the purchase of the land from the defendants was unauthorized, the deed is voidable only, and, before it can be rescinded at the suit of the grantors, they must return or offer to return the money paid them as a consideration therefor.

3. Nor does the fact that the act of 1893 was declared unconstitutional and void, after the purchase made under it had been consummated and the title vested in the state, render the deed a nullity : *King* v. *Philadelphia Company*, 154 Pa. St. 160 (35 Am. St. Rep. 817, 26 Atl. 308, 21 L. R. A. 141). The purchase was accomplished under color of lawful authority, and at a time when the law was presumptively valid, and therefore must be regarded as having been lawfully made. The deed, being regular in form and properly executed, vested the title to the land in the state as effectually as if purchased for some authorized purpose, even if it might be subject to cancellation in a proper proceeding.

4. It is further insisted that the court was without jurisdiction because the state was not in possession of the land at the time of the commencement of the suit. The defendants interposed no objection to the jurisdic-

tion of the court below by plea or answer, but answered to the merits, and set up matter as a basis for affirmative relief, and prayed the court to order and decree that the deed made by them to the state is void on account of fraud and misrepresentation, and therefore that the state took nothing thereby. The relief prayed for is such as a court of equity alone could administer, and in thus submitting themselves to the jurisdiction of the court, and asking for affirmative relief, they waived their right to insist that the court was without jurisdiction because the state was not in possession at the time the suit was commenced. This question is fully discussed in *O'Hara* v. *Parker*, 27 Or. 156 (39 Pac. 1004), wherein Mr. Justice WOLVERTON, speaking for the court, says : ''It is said that proof of possession and title is necessary to entitle a party to recover in a suit to remove a cloud from title ; but where the parties say, in effect, by their pleadings and contentions before the court, that they want specific relief, which alone a court of equity can administer, without regard to the court's especial jurisdiction, there can exist no good reason why the court should not grant the prayer, if it has jurisdiction of the subject-matter. The objection to the jurisdiction not appearing upon the face of the complaint, it should have been taken by some appropriate plea challenging the right of the plaintiff to proceed in equity, failing in which, and by his demand for affirmative equitable relief, the defendant has waived his right to now insist that the court is without jurisdiction because the plaintiff is without possession.'' Counsel, in their argument, seem to have confused the fact of jurisdiction with its exercise. A court of equity unquestionably has jurisdiction to remove a cloud from title, but, as a condition to its exercise, the plaintiff is required to be in possession of the premises ; for otherwise, if he is the owner of the legal title, the law affords him ample

relief.   But, as said in *O'Hara* v. *Parker*, 27 Or. 156 (39 Pac. 1004), "this condition, however, can be waived by the parties, and, if the court proceeds with the exercise of jurisdiction, it can grant the equitable relief appropriate in such cases."   It follows, therefore, that the defendants must be deemed to have waived the objection to the state's right to relief because it was not in possession of the land at the time of the commencement of the suit, by submitting themselves to the jurisdiction of the court in asking affirmative relief in their answer.   The decree of the court below is affirmed.        AFFIRMED.

<div style="text-align:center">

Decided 9 July, 1900.