PIONEER MINING CO. v. PACIFIC COAL CO. et al.

(Second Division. Nome. February 2, 1912.)

No. 2245.

1. ESTOPPEL (§ 52*).

In order to constitute an estoppel, there must exist a false representation or concealment of material facts. It must have been made with knowledge, actual or constructive, of the facts. The party to whom it was made must have been without knowledge or the means of knowledge of the real facts. It must have been made with intention that it should be acted upon, and the party to whom it was made must have relied upon or acted upon it to his prejudice. The party relying upon an estoppel

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

must not only have acted in reliance upon the conduct or representations of the parties sought to be estopped but must be destitute of knowledge of the real facts himself and have been without convenient or ready means of acquiring such knowledge. Where the truth is known to both parties, or where both parties have equal means of knowledge, there can be no estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. § 52.*]

2. COURTS (§ 37*)—JURISDICTION—WAIVER OF OBJECTION.

Where the defendant in his answer sets up title to an overlap between two mining claims, prays that his title thereto be quieted as against the plaintiff's claim of title, introduces his testimony in support of that plea, and demands decree in accordance with his plea and proof, it is a waiver of a plea to the jurisdiction of the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–149, 151, 156; Dec. Dig. § 37.*]

3. EQUITY (§ 67*)—LACHES.

Laches is such negligence as results in the omission to do what one is by law required to do to save a right, and which warrants a presumption that the claimant of it has abandoned it and declines to assert it. When an assertion of the right is neglected or omitted for a period of time more or less great, and under such circumstances as to cause prejudice to an adverse party, it may operate as a bar in equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. § 67.*]

4. MINES AND MINERALS (§ 49*)—ADVERSE POSSESSION.

The statute of limitations will not run in favor of one in adverse possession of an overlap between two mining claims on the public lands, prior to the issuance of the patent. The cases of Tyee Mining Co. v. Langstedt, 136 Fed. 124, 69 C. C. A. 548, and Tyee Mining Co. v. Jennings, 137 Fed. 864, 70 C. C. A. 393, followed.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135; Dec. Dig. § 49.*]

Plaintiff brings this action under section 475 of the Alaska Code of Civil Procedure, setting up title by virtue of a placer mining location made on the 3d day of January, 1899, in the Cape Nome recording district, district of Alaska, and known as Bench No. 1 Moonlight creek, near Moonlight springs, and giving a surveyed description by metes and bounds, courses and distances, and claiming to be in the possession of said

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

mining claim, and that defendants, and each of them, claim an estate and interest in said premises adverse to plaintiff, the extent and nature of which adverse claims are to plaintiff unknown, and that said adverse claims are without right, and that the value of the property is $10,000, and prays judgment that the defendants be decreed to have no estate or interest whatever in said premises, or any part thereof, and that the title of plaintiff be decreed good and valid, and that the defendants be forever enjoined and restrained from asserting any claim whatsoever in and to said placer claim adverse to plaintiff, and for general equitable relief.

To this complaint the defendant Pacific Coal & Transportation Company and the defendant M. D. McCumber have answered separately; their answers being identical, except that the defendant McCumber is alleged to be the lessee of the defendant Pacific Coal & Transportation Company. Both answers deny all the material allegations of the complaint, and especially deny the possession of the plaintiff. Then follow seven separate and affirmative defenses.

The first affirmative defense alleges, among other things, that the defendant Pacific Coal & Transportation Company is the owner of the Moonlight or Grant claim alleged to have been located on the 9th day of January, 1899, describing it by metes and bounds according to survey, sets up the tenancy of McCumber under a lease dated the 5th day of August, 1908, also alleges that the placer mining claim described in paragraph 4 of plaintiff's complaint as No. 1 Bench Moonlight creek, near Moonlight springs, covers and embraces an overlap of a large portion of the westerly end of the Grant claim as described by defendants, and alleges that the exact boundaries and limitations claimed by the said plaintiff are unknown to the said answering defendants, and that the said plaintiff has no right, title, interest, or estate in and to the said part or portion so claimed by the said defendants under said Grant claim, but wrongfully, unlawfully, and without right assert title and ownership thereto, and the said defendants then again allege that they are in possession of said overlap and said Grant claim.

4 A.R.—30

In the second affirmative defense defendants allege ownership of the said Grant claim and that their grantors and predecessors in interest have been in the uninterrupted, notorious, and exclusive possession of the whole of said Grant claim under color and claim of title by reason of said Grant location ever since the 9th day of January, 1899.

The third affirmative defense in substance is that the defendants were in the exclusive possession of the whole of the Grant claim, including the ground in controversy, on the date when plaintiff commenced this cause of action, to wit, the 7th day of November, 1910.

The fourth affirmative defense alleges ownership in the defendants by reason of the Grant location made on the 9th day of January, 1899, describing the premises by metes and bounds; the transfer by mesne conveyances to the defendant Pacific Coal & Transportation Company; that plaintiff asserts ownership, title, and possession to a large portion of the westerly part of the Grant claim, as described in paragraph 4 of plaintiff's complaint; that plaintiff ought not to be permitted to allege and assert that it is the owner and entitled to the possession of said part of said Grant claim, or any part thereof, "because that ever since the 9th day of January, 1899, this answering defendant, the Pacific Coal & Transportation Company, its predecessors and grantors, were the owners of the said Grant claim, as above described, by metes and bounds, and in the exclusive possession thereof, and entitled to such exclusive possession, and because that ever since said 9th day of January, 1899, the defendant the Pacific Coal & Transportation Company, its grantors and predecessors in interest, were, have been, and now are in the uninterrupted, open, adverse, and notorious possession of the whole of said Grant placer claim and the conflict area thereof, and have been engaged for more than seven years last past in operating, mining, and developing the said premises, and particularly the part in controversy in this action, with full knowledge and notice on the part of said plaintiff, and without any objection, interruption, or complaint on its behalf; that the defendant Pacific Coal & Transportation Company and its lessees have expended large sums of money in mining, prospecting, and developing

the said area in conflict of said Grant claim, without objection or complaint of, from, or on behalf of said plaintiff, and with its full knowledge, ever since the location thereof, on January 9, 1899."

The fifth affirmative defense alleges that at all times mentioned in plaintiff's complaint the defendant Pacific Coal & Transportation Company, its grantors and predecessors in interest, were in the actual, open, exclusive, notorious, and uninterrupted possession of the premises in dispute.

The sixth affirmative defense alleges that plaintiff's cause of action was barred by the provisions of sections 3 and 4 of chapter 2, pt. 4, of the Code of Civil Procedure of Alaska, and by virtue of section 361, c. 38, pt. 4, of the Code of Civil Procedure of Alaska.

The seventh affirmative defense recites the history of certain litigation conducted in the district court for this division between the Moonlight Springs Water Co., Plaintiff, v. George Doverspike et al., Defendants, whereby the Moonlight Springs Water Company sought to enjoin Doverspike et al. from polluting the waters of Moonlight springs, and alleges that, by reason of the matters and things alleged in said affirmative defense, the plaintiff is estopped from asserting title to the premises in controversy.

To the amended answers plaintiff filed separate replies, denying all the allegations of the first affirmative defense, except that the premises described in its complaint and called Bench No. 1 Moonlight creek covers and embraces a portion of the westerly end of the alleged Grant claim as described in defendants' answers, and denies all of the material allegations of the several affirmative defenses except that it admits certain affirmative allegations contained in the seventh affirmative defense, and prays as in the complaint.

O. D. Cochran and G. J. Lomen, both of Nome, and Geo. A. Schofield, for plaintiff.

Elwood Bruner, of Sacramento, Cal., for defendant Pacific Coal Co.

William A. Gilmore and Geo. B. Grigsby, both of Nome, for defendant McCumber.

MURANE, District Judge. It will be seen from the statement of the pleadings that Bench No. 1 on Moonlight creek, the location under which plaintiff claims, was made on the 3d day of January, 1899, and that the Grant location, under which defendants claim, was made on the 9th day of January, 1899; that plaintiff's location is prior in point of time appears from the pleadings and was not controverted during the trial. Plaintiff's location being prior in point of time, if when made included the ground in controversy, the defendants' location, in so far as it conflicted, would be absolutely void. The testimony shows that when the Grant location was made but one stake was erected, and neither the exact date when the other stakes were placed upon the ground marking the boundaries nor the person by whom they were erected appears in the record. Three of the stakes, namely, the southeast, southwest, and northwest corners, of Bench No. 1 Moonlight creek, plaintiff's claim, were established in their present position as the place where they originally stood on January 3, 1899, by testimony clear and convincing even beyond a reasonable doubt. Near the southeast corner stake is a small prospect hole dug by Mrs. Jorgenson in 1899, which was identified by several witnesses who were in a position to know, and whose testimony has not been contradicted in any particular. In fact, there is no testimony in the record which directly or indirectly places the position of the three stakes mentioned at any time in any other place than that they now occupy. The original position of the northeast corner stake was not so definitely located, but any variance of a few feet that might occur with reference to that corner could not materially affect the rights of the defendants. A discovery having been proven, the boundaries marked so that they can be readily traced, and a location notice placed on record, the conclusion cannot be avoided that No. 1 Bench was a valid location on the 3d day of January, 1899, and that the ground embraced within its boundaries was then segregated from the public domain. That being true, if defendants recover in this action, it must be by reason of some of the defenses other than their first affirmative defense.

We will first consider the fourth affirmative defense, togeth-er with the seventh affirmative defense; both being pleaded by way of estoppel. In order to constitute an estoppel there must exist a false representation or concealment of material facts. It must have been made with knowledge, actual or constructive, of the facts. The party to whom it was made must have been without knowledge or the means of knowledge of the real facts. It must have been made with intention that it should be acted upon, and the party to whom it was made must have relied upon or acted upon it to his prejudice. The party relying upon an estoppel must not only have acted in reliance upon the conduct or representations of the parties sought to be estopped, but must be destitute of knowledge of the real facts himself and have been without convenient or ready means of acquiring such knowledge. Where the truth is known to both parties, or where both have equal means of knowledge, there can be no estoppel. All the testimony introduced by defendants under these defenses was received over the objection of plaintiff that an estoppel had not been properly or sufficiently pleaded, the court reserving a ruling on the sufficiency of the pleadings until final judgment; and it is the opinion of the court that in neither instance have the essential elements of an estoppel been pleaded. However that may be, and considering the pleadings as sufficient, it is certain that there was no testimony to sustain a single element of an estoppel in pais or by record. There is no contention that there was a false representation made by plaintiff or a concealment of any material fact. It is admitted by the defendant McCumber that he knew of the existence of the conflict, and that the southeast corner stake of Bench No. 1 Moonlight creek stood within a few feet of his cabin. The records were open to him. He was advised of the conflict by a surveyor, and, if he was ignorant of the true condition, it was because he closed his eyes and refused to hear. The stakes which now stand upon the ground were placed there by a surveyor in 1902, and all that time have been so marked that any person who desired to do so could readily ascertain to what claim they belonged and by them trace the boundaries. Each suc-

cessive representative of the Pacific Coal & Transportation Company appears to have been well aware of the conflict; the testimony of Mr. Bard showing that, while he was acting in that capacity, he was notified by representatives of plaintiff, Pioneer Mining Company, at which time he alleges he threw the representative off the premises and ordered him not to return. Under such a state of the pleadings and evidence, it would be a waste of time to go extensively into the law of estoppel.

The third affirmative defense alleges that on the 7th day of November, 1910, the date upon which plaintiff instituted this suit, the defendants were in possession of the ground in controversy, and that the plaintiff, Pioneer Mining Company, was not in possession of the conflict area or any part thereof, and has no right to maintain this action in equity, being, as they contend, a plea to the jurisdiction of the court to try the cause sitting as a court of equity. Before taking up the law on this phase of the case, it might be well to briefly revert to the facts. First, the undisputed facts as they appear in the evidence are that the plaintiff had for several years prior to the commencement of this action maintained upon the ground in controversy a large ditch, and also a nest of penstocks, from which ditch and penstocks have been constructed at least six pipe lines varying in size from 10 or 12 to 30 inches, and extending over and across the area in conflict, said pipe lines having been used since the year 1905 in conveying water to plaintiff's various mining operations in the immediate vicinity, a portion of the water so conveyed being applied upon the lower or westerly end of Bench claim No. 1 during the past two or three years prior to the commencement of this action in conducting extensive mining operations upon Bench claim No. 1; that, during each year since the construction of said penstocks and pipe lines, plaintiff has expended from $800 to $1,200 in repairs and improvements and cleaning of the pipe lines upon the ground in controversy; that during the summer of 1910, from about the 12th of May to the 27th of October, the defendants were not in the actual possession or engaged in mining upon the Grant claim nor the ground in controversy, during which

time plaintiff was carrying on extensive mining operations on Bench claim No. 1 by hydraulic process, and that on the 7th day of November, 1910, the date of commencement of this action, two employés of the plaintiff were engaged in mining upon said Bench claim No. 1. Thus far there is no dispute. It is contended, however, that some days prior to the 7th day of November, 1910, the defendants resumed their actual possession and began preparations for active mining upon the ground in controversy. This contention is supported by the testimony of Adolph Meyer, which is flatly contradicted by the testimony of three witnesses for plaintiff, besides the expert testimony of Mr. Gibson, showing climatic conditions as to the fall of snow, etc., which makes it appear at least possible that Mr. Meyer was mistaken in the month. It would therefore seem that the preponderance of the evidence upon this disputed point is in favor of the plaintiff. This statement of the facts is not necessary for a decision of the point raised by this plea, and is simply inserted as a guide in the preparation of findings of fact and conclusions of law in conformity with this opinion.

Under the law, defendants having set up a title in themselves by virtue of a valid location of the ground in controversy, alleging their possession, and praying that their title be quieted as against the plaintiff and having introduced testimony in support of that plea and insisted upon their right to such a decree up to this present moment, even in their written briefs, have waived their plea as to the jurisdiction of this court. They cannot be permitted to assume such inconsistent positions. They in effect contend that, if the court finds in their favor, it has ample jurisdiction to do so, but, if it finds against them, it is without jurisdiction. Defendants' contention that they have the right to set up all the defenses which they may have, and rely upon any or all of them, is undoubtedly sustained by the weight of authority as laid down in Bliss on Code Pleading, cited by defendants, but that refers to defenses and not to cross-bills or counterclaims.

The Supreme Court of Oregon, however, has taken a different view from perhaps the majority of the Code states,

holding in an unbroken line of decisions that a plea in abatement, while it may be interposed in the same answer with other defenses, and that it is not necessary that it be labeled a plea in abatement, yet it must be disposed of before proceeding to a trial upon the merits. We, having adopted in our Code the laws of Oregon, may be bound by those decisions, but it is unnecessary for this court to pass upon that particular point of procedure at this time, for the reason that that is not the question involved in this case.

Judge Baker of the Circuit Court of Appeals, Seventh Circuit, in the case of Sanders v. Village of Riverside, 118 Fed. 720, 55 C. C. A. 240, lays down the rule which must govern in this case in the following language:

"The village thus selected its own tribunal, one competent to pass upon the conflicting claims of title, and thereafter could not be permitted to assert that its adversary should have resorted to a court of law. * * * And for the village it may be said that, on the coming in of the master's report, it did not challenge the jurisdiction of the court to decide the merits of the exceptions presented by Mr. Sanders. The court, so far as the record discloses, of its motion dismissed the case, the cause, and the cross-cause, at this stage of the proceedings. But the present contention of the village in support of the court's action apparently comes to this: If the tribunal of its own selection found that the village had title to the whole, the case would be a suit in equity; but, if Mr. Sanders were found to have title to any part, the case would be an action at law. This sounds very like the urchin's proposition to match coppers on the basis of 'Heads, I win; tails, you lose.'"

In 32 Cyc. p. 1367, the author lays down the following general proposition:

"But if the defendant, in the ordinary statutory action to determine adverse claims, alleges title in himself and demands affirmative relief against plaintiff, it is not necessary for plaintiff to prove the allegation that the land is vacant and unoccupied or that he is in possession, as the case may be"—citing Kipp v. Hagman, 73 Minn. 5, 75 N. W. 746; Hooper v. Henry, 31 Minn. 264, 17 N. W. 476, and other cases.

To the same effect are the following cases: O. C. M. Co. v. Abbott (C. C.) 167 Fed. 682; Hopwood v. Patterson, 2 Or. 50; State v. Blize, 37 Or. 408, 61 Pac. 735; O'Hara v. Parker, 27 Or. 172, 39 Pac. 1004.

Counsel for defendants very earnestly insisted that plaintiff is guilty of such laches as should bar its recovery in this action. Laches is such negligence as results in the omission to do what one is by law required to do to save a right, and which warrants a presumption that the claimant of it has abandoned it and declines to assert it. When an assertion of the right is neglected or omitted for a period of time more or less great, and under such circumstances as to cause prejudice to an adverse party, it may operate as a bar in equity. Although a proper ingredient in the law of laches, the instances seem to be rather where courts have declared that mere lapse of time might effect a positive bar, even in cases of purely equitable jurisdiction; the defense of laches is in equity only permitted to defeat an acknowledged right on the ground that it affords evidence that the right has been abandoned. Delay alone is not the sole and controlling factor that constitutes laches. It it were so, some period fixed by statute would afford a safe and unvarying rule. Hamilton v. Dooly, 15 Utah, 280, 49 Pac. 769; Cottrell v. Watkins, 89 Va. 801, 17 S. E. 328, 19 L. R. A. 754, 37 Am. St. Rep. 897; Ripley v. Seligman, 88 Mich. 177, 50 N. W. 143; Babb v. Sullivan, 43 S. C. 436, 21 S. E. 277.

From the foregoing authorities it will be seen that one of the controlling features in laches is such conduct as would lead the court to believe that the party against whom it is to be enforced has abandoned his right, and where a party is asserting his right, and another with full knowledge of his claim deliberately or negligently trespasses upon that right, no matter how frequent the trespasses, and even though considerable sums of money were expended while thus trespassing, the trespasser acting at all times, not in ignorance of the true title, but in opposition to it, does not so appeal to the conscience of the chancellor as to cause a court of equity to invoke the doctrine of laches. In addition to this position, the authorities seem to be quite unanimous that in this character of actions laches is never a proper defense.

Quoting from section 33, vol. 1, book 5, Pomeroy's Equity Jurisprudence:

"A party in possession of land, who resorts to a court of equity to settle a question of title, is not chargeable with laches, no matter how long his delay. Such a party is at liberty to wait until his title is attacked before he is obliged to act. The most frequent illustrations of this principle are found in suits by parties in possession to remove a cloud on title or to quiet title. Where, however, statutes permit such suits by parties out of possession, the doctrine of laches does apply, if the plaintiff is not in possession"—citing, in support of the text, Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Thompson v. Dumas, 85 Fed. 517, 29 C. C. A. 312; Massenburg v. Denison, 71 Fed. 618, 18 C. C. A. 280; Gunnison Gas & Water Co. v. Whitaker (C. C.) 91 Fed. 191; Shaw v. Allen, 184 Ill. 77, 56 N. E. 403; Gordon v. Johnson, 186 Ill. 18, 57 N. E. 790; Hayes v. Carroll, 74 Minn. 134, 76 N. W. 1017; Cook v. Lasher, 73 Fed. 701, 19 C. C. A. 654; Hensel v. Kegans, 8 Tex. Civ. App. 583, 28 S. W. 705; Jackson v. Boyd, 75 Ark. 194, 87 S. W. 126; Weir v. Cordz-Fisher Lumber Co., 186 Mo. 388, 85 S. W. 341; Waldron v. Harvey, 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959.

The next question demanding the consideration of the court is the plea of the statute of limitations interposed by defendants. This question has been definitely settled in the case of Tyee Mining Co. v. Langstedt, 136 Fed. 124, 69 C. C. A. 548, and Tyee Mining Co. v. Jennings, 137 Fed. 864, 70 C. C. A. 393. These decisions are binding upon this court, and the mere citation of them is all that is necessary to dispose of this question, and, if it were not for the very earnest and able contention of counsel for defendants, this court would not consider the subject further. In view of the fact that in the Tyee Case the Circuit Court of Appeals referred to the Oregon cases of Altschul v. O'Neill, 35 Or. 202, 58 Pac. 95, Altschul v. Clark, 39 Or. 315, 65 Pac. 991, and other Oregon decisions which had been rendered prior to the adoption of our Code, and by our having adopted the Oregon laws presumably adopted the Oregon decisions, counsel for defendants contend that the Circuit Court of Appeals gave controlling weight to the Oregon decisions in the Tyee Case. Since the rendition of the opinion in the Tyee Case the case of Boe v. Arnold, 54 Or. 52, 102 Pac. 290, 20 Ann. Cas. 533, recedes from and overrules the Altschul v. O'Neill and other Oregon cases, and it is for the purpose of examining to what extent the case of Boe v.

Arnold affects the question that the court deems it advisable to review some of the authorities.

Defendants' contention that the case of Boe v. Arnold, supra, is in direct opposition to the case of Tyee v. Langstedt, supra, is not borne out by a careful study of the cases. In Boe v. Arnold the Supreme Court of Oregon uses the following language:

"The latest decisions of the Supreme Court of the United States rendered in cases having many features similar to the case at bar ought of themselves in our judgment to justify this court in overruling and receding from the doctrine enunciated in Altschul v. O'Neill, Altschul v. Clark, and Beale v. Hite [35 Or. 176, 57 Pac. 322], so far as they conflict with the views herein announced. Missouri Land Co. v. Wiese, 208 U. S. 234 [28 Sup. Ct. 294, 52 L. Ed. 466]; Missouri Land Co. v. Wrich, 208 U. S. 250 [28 Sup. Ct. 299, 52 L. Ed. 473]; Iowa R. R. Co. v. Blumer, 206 U. S. 482 [27 Sup. Ct. 769, 51 L. Ed. 1148]."

A careful consideration of the case of Boe v. Arnold will show that the court decided the case first upon the question of estoppel, and simply receded from the erroneous position taken by that court in prior decisions, where it held that, until patent had issued, there could be no adverse possession even under a grant in præsenti, so long as the party in possession recognized the title in the United States. The United States cases cited and relied upon in this decision very clearly show that the case of Boe v. Arnold does not conflict in any way with the Tyee Case.

We quote from Missouri Land Co. v. Wiese, 208 U. S. 234, 28 Sup. Ct. 294, 52 L. Ed. 466:

"Plaintiff in error set up and claimed by its answer and cross-bill that the title to its interest remained in the United States until the issuance of the patent in 1903. In other words, that the grant for the Sioux City branch was not a grant of the legal title in præsenti. * * * The cause was submitted to the court on the pleadings and evidence, and a decree was entered adjudging that Wiese had a perfect title to the tract. The Supreme Court of Nebraska affirmed the decree ([Wiese v. Union Pac. Ry. Co., 77 Neb. 40], 108 N. W. 175), holding in substance, that the grant to the two companies of the tract in controversy was in præsenti; that the title of the companies attached upon the definite location of their lines of road; and that the adverse possession of Wiese and his grantor, commencing in 1882, had completely barred any claims of the companies to the property. * * * That the deci-

sion of the court below was right, as applied to the land within the place limits of the main line grant made to the Union Pacific Railroad Company by the act of 1862 and the amendatory act of 1864, is not an open question. This is so, since it has been expressly held that the main line grant was one in præsenti. * * * But when the grant is in præsenti, and nothing remains to be done for the administration of the grant in the Land Department, and the conditions of the grant had been complied with and the grant fully earned, as in this case, notwithstanding the want of final certification and the issue of the patent, the railroad company had such title as would enable it to maintain ejectment against one wrongfully on the lands, and title by prescription would run against it in favor of one in adverse possession under color of title."

The authorities of counsel for defendants were directed largely to the combatting of an erroneous position taken by counsel for plaintiff following the early decisions of Oregon, and in their argument lost sight of the fact that it was not so much a question as to whether or not the party in adverse possession was holding as against the world, including the United States government, as it is a question whether or not the title actually remained in the government during the period of adverse possession. The mere ministerial act of issuing patent is not controlling; it being simply written evidence of title.

The case of Redfield v. Parks, 132 U. S. 244, 10 Sup. Ct. 83, 33 L. Ed. 327, very clearly states the reason for the rule adopted and consistently followed for a great number of years down to the present time by the Supreme Court of the United States:

"That the possession of the defendants does not bar the plaintiff's action is a point too clear to admit of much controversy. It is a well-settled principle that the statute of limitations does not run against a state. If a contrary rule were sanctioned, it would only be necessary for intruders upon the public lands to maintain their possessions until the statute of limitations shall run; and then they would become invested with the title against the government, and all persons claiming under it. In this way the public domain would soon be appropriated by adventurers. Indeed, it would be utterly impracticable, by the use of any power within the reach of the government, to prevent this result. It is only necessary, therefore, to state the case in order to show the wisdom and propriety of the rule that the statute never operates against the government. The title under which the plaintiff in the ejectment claimed emanated from the government in 1824. Until this time there was no title

adverse to the claim of the defendants; there can therefore be no bar to the plaintiff's action."

Take the case at bar, plaintiff's location being a prior and valid location, defendants' location in conflict was void as to the conflict area and of no force or effect. Had plaintiff continued to do the annual assessment work upon this property outside of the conflict area for a period of eight or nine years, and during all that period the defendants had remained in the actual, open, notorious, adverse possession of the tract in conflict, but before the statutory period had expired plaintiffs forfeited their location by failing to do the annual assessment work, it is very clear that the area in conflict would revert to the public domain, and that the first person connecting himself with the government title by taking the necessary steps to make a valid location would be entitled to the grant from the government, and defendants could not set up their adverse possession as against such a subsequent locator. There is not much merit in counsel's contention that we are bound by the decision of the Oregon court in Boe v. Arnold, for the simple reason that that decision was rendered subsequent to the adoption of the laws in the Alaska Code. While we may have adopted the former decisions, we are no more bound by subsequent decisions than we are of any other state. It would be very presumptuous on the part of this court in any event to follow the decision of the Supreme Court of the state of Oregon as against the decisions of the Circuit Court of Appeals in the Tyee Cases, notwithstanding counsel's prediction that the Circuit Court of Appeals will recede from its decisions in those cases and follow the Oregon case. If counsel for defendants have cited any authority from the federal courts holding that there could be an adverse possession where the title still remained in the government, it has escaped the notice of the court, except, perhaps, where all the steps necessary to be taken had been performed by the entryman, and final receipt had issued, and only the ministerial act of issuing patent remained. In such a case there could be no forfeiture or abandonment on the part of the entryman, and no reason for following a different rule.

This disposes of all of the contentions made by counsel for defendants. Let findings of fact and conclusions of law be prepared in conformity with this opinion.