COOK et al. v. LASHER et al.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

No. 151.

1. WHO MAY APPEAL—PERSONS NOT PARTIES.
One who is named as a party to the bill, but who is never served with process, and does not appear, is not a party to the record, and cannot be heard on appeal.

2. EQUITY JURISDICTION—ABSENT PARTIES.
A decree canceling the deed of a commissioner of school lands in a suit against the commissioner's grantee does not affect the right of one to whom the grantee conveyed before the commencement of the suit. and who was never served with process, and never became a party.

3. TAXATION—SALES OF FORFEITED LANDS—VALIDITY.
A tract of 36,750 acres, set off by a resurvey in 1852 out of two tracts of 480,000 and 320,000 acres, respectively, granted to Robert Morris in 1795, and several times sold and conveyed as a separate tract, cannot be affected by proceedings in the West Virginia courts for the sale, as forfeited school lands, of the original Robert Morris tract of 480,000 acres.

4. SAME—DELINQUENT TAX SALE.
Failure of the sheriff to make out and return, within 10 days, a list of the lands purchased on behalf of the state, as required by the statute (Code W. Va. c. 31, § 31), renders the tax sale null and void. De Forest v. Thompson, 40 Fed. 375, approved.

5. LACHES—DELAY IN ATTACKING VOID TAX SALE.
Delay of a landowner in bringing suit to annul a tax deed, which is utterly void for failure to comply with the requirements of the statute, and which consequently does not affect his title, is not imputable to him as laches.

6. TAXATION—SALES OF FORFEITED LAND—WEST VIRGINIA STATUTES.
The West Virginia statute of March 18, 1882, providing for service of process, by publication, on claimants of land alleged to be forfeited for nonentry on the county tax books, in proceedings for the sale thereof, did not apply to proceedings already commenced; and, as the prior statute in relation to such sales did not provide for summoning persons interested in the land (Acts 1872–73, p. 449), an attempted service of process by publication, under the old statute, was a mere nullity.

In Error to the Circuit Court of the United States for the District of West Virginia.

This was a bill by George T. Lasher and others against L. B. Cook and others to annul certain deeds made by the commissioner of school lands for Wyoming county, W. Va. The circuit court made a decree in accordance with the prayer of the bill, and the defendants have appealed.

C. C. Watts, of Watts & Ashley (Okey Johnson, on the brief), for appellants.

S. L. Flourney, of Couch, Flourney & Price (J. R. Sypher, on the brief), for appellees.

Before SIMONTON, Circuit Judge, and HUGHES and PAUL, District Judges.

PAUL, District Judge. This is an appeal from a decree of the circuit court of the United States for the district of West Virginia. The suit was brought by the plaintiffs below to set aside and annul

certain deeds made to the appellants by W. B. McClure, commissioner of school lands for Wyoming county, W. Va., conveying certain lands claimed by the plaintiffs. These lands were sold by said McClure, commissioner of school lands, under an order of the circuit court of Wyoming county, in a proceeding in that court in the name of said commissioner of school lands against a tract of land of 480,000 acres, granted by the commonwealth of Virginia to Robert Morris, by a patent dated the 23d day of March, 1795. The land involved in the controversy is a tract containing 36,750 acres, and the bill alleges that it is part of two grants from the commonwealth of Virginia, to wit, the above grant for 480,000 acres, and another grant for 320,-000 acres, dated March 4, 1795. These lands, when patented, were situated in Wythe county, Va., but in 1799 the county of Tazewell was formed, and they were embraced in the boundaries of that county. In the year 1824 the county of Logan was formed, and part of the lands were embraced in that county, leaving the balance in Tazewell county. In 1850, Wyoming county was formed out of Logan county, and embraced that portion of these lands which before was situated in Logan county. McDowell county was formed out of Tazewell county in 1858, and embraced the greater part, if not all, of these lands, then situated in Tazewell county. By deed bearing date March 13, 1797, Robert Morris conveyed both the 480,000-acre tract and the 320,000-acre tract to William Cramond, and from William Cramond the title to both tracts passed, by mesne conveyances, to Henry Cramond. The two tracts, prior to 1842, became forfeited in the name of Henry Cramond to the state of Virginia, for the non-payment of taxes thereon prior to that year; and in 1843 the lands embraced in both grants were sold under proceedings had by the commissioner of forfeited and delinquent lands for Tazewell county, in the circuit court for Tazewell county, and were purchased by William Cramond. This sale was confirmed by the court; and on July 20, 1846, a deed was made to the heirs of said William Cramond, he having died intestate after the confirmation of the sale. By deed dated November 5, 1846, three of the grantees in the last-mentioned deed conveyed said tracts of land to their co-grantee, Henry Cramond, who on the same day conveyed them to Charles Freinour; and Freinour, on the 22d of November, 1846, conveyed 50,000 acres, by metes and bounds, to Thomas Beck; and on March 1, 1847, he conveyed the residue, 750,000 acres, to John Herman. In 1847, Herman conveyed undivided parts of said tracts of land to Michael Bouvier and several other distinct purchasers. Bouvier and the other purchasers of undivided interests conveyed the whole 750,000 acres to John Telford, to secure a debt of $6,000. In 1848, said Telford assigned the mortgage and debt to M. Bouvier, and said Bouvier brought a chancery suit in the circuit court of Tazewell county to foreclose the mortgage; and under a decree in said suit, in 1851, the lands were sold, and purchased by M. Bouvier, and were conveyed to said Bouvier by Stras, special commissioner of the circuit court of Tazewell county, by deed dated October 10, 1852. Bouvier, in 1852, had a resurvey made of the lands, and it was ascertained that

the two tracts, after deducting the 50,000 acres conveyed by Freinour to Beck, contained only 157,500 acres, instead of 750,000 acres. Bouvier had the two tracts, now found to contain only 157,500 acres, divided by metes and bounds into six tracts, varying in quantity, one of which contained 36,750 acres, and another 8,400 acres. Bouvier, by deeds dated March 9, 1853, conveyed four of said parcels to other persons, and retained the parcel of 36,750 acres and the 8,400 acres, aggregating 45,150 acres. By deed dated January 7, 1865, Bouvier conveyed the 36,750-acre tract by metes and bounds to Jonathan Patterson, Jr., and others. Patterson and his co-grantees, by deed dated January 7, 1865, conveyed the same to the appellees; and the tract of 36,750 acres is the land in controversy in this suit.

In November, 1881, W. B. McClure, commissioner of school lands for Wyoming county, filed his report in the circuit court of that county, stating that there was situated in said county a large survey of land, containing 480,000 acres, granted to Robert Morris on the 23d day of March, 1795; and that the same was forfeited, under the laws of West Virginia, for failure of the owner to cause the same to be entered on the land books of Wyoming county, and assessed with taxes thereon. He further reported that this tract of land had never been on the land books of Wyoming county, nor on the land books of McDowell county, where a small portion of the said land is situated. He further reported that within the said 480,000 acres were several large tracts, claimed by various parties, among them the tract in controversy, for 36,750 acres, claimed by Francis Lasher; but that these parcels had been forfeited for nonentry along with the 480,000-acre tract out of which they had been taken. On the filing of this report, a decree was entered ordering a rule to be awarded against the unknown heirs of Robert Morris, and all persons claiming title by, through, or under the said Morris, and against the said Francis Lasher and other persons named, and against all persons whomsoever who set up or claimed any right or title to the said 480,-000 acres, or any portion thereof, summoning them to appear at the first day of the next term of said court to show cause why said tract of 480,000 acres should not be sold as school lands for the benefit of the school fund of the state. At the April term, 1882, a decree was entered directing a sale of said 480,000 acres of land, the same to be sold in parcels and sections not exceeding 640 acres each. In pursuance of said decree, said commissioner sold a large number of tracts, 47 of which, amounting to 18,000 acres or more, are claimed by the plaintiffs as their land; and deeds were ordered to be executed to the purchasers, the defendants below, and the same were subsequently executed by said McClure, commissioner of school lands.

The plaintiffs filed their bill in this cause in June, 1890, attacking the sales made in said forfeiture proceedings and the deeds made by said McClure, commissioner, to the purchasers; and on February 25, 1895, a decree was entered by the court below, annulling the forfeiture, and the proceedings thereon, the sale made therein, and the deeds made to the purchasers of said lands. This is the decree from which the appeal is taken.

The first assignment of error is that the court erred in canceling the deed from William B. McClure, commissioner of school lands, to A. J. Ellis, made on the 29th day of January, 1883, because the said land was by the said A. J. Ellis conveyed to the petitioner Nicholas B. Keeney and others, on the 18th day of January, 1888, as appears by Exhibit 7, with the answer of defendants, which deed was made to said Keeney and others more than two years before the institution of said suit; and the said Keeney was not therefore a pendente lite purchaser, and, at the time the decree was rendered in this cause, was not before the court, no process having been served upon him, and he having made no appearance in the cause, by answer or otherwise. The record shows that "———— Keeney" was named a party defendant in the original and amended bills, but that process was not served on him, the return being, "———— Keeney not found." The first appearance of said Nicholas B. Keeney in the proceedings in the court below is as one of the petitioners for an appeal to this court. As he was not a party to the record, he has no right of appeal to this court, and cannot be heard. It is well settled that no one but a party to the record has the right to an appeal or a writ of error. 2 Fost. Fed. Prac. § 482; Bayard v. Lombard, 9 How. 530; Godfrey v. Terry, 97 U. S. 171; Ex parte Cutting, 94 U. S. 14; Ex parte Cockcroft, 104 U. S. 578.

Section 737, Rev. St., provides:

"When there are several defendants in any suit at law or equity, and one or more of them are neither inhabitants of, nor found within, the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it, but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process, nor voluntarily appearing to answer; and non-joinder of parties who are not inhabitants of, nor found within, the district as aforesaid, shall not constitute matter of abatement or objection to the suit."

Under the provisions of the statute, and under equity rule 17, which is to the same effect, Keeney would not be concluded or prejudiced by the decree against the parties properly before the court. The parties to the record are not affected by the absence of Keeney. Their rights are distinct from his, and all the defenses they were entitled to make could be made as well as if Keeney had been a party to the record.

In Elmendorf v. Taylor, 10 Wheat. 152, the supreme court said:

"Wherever the case may be completely decided as between the litigant parties, an interest existing in some other person, whom the process of the court cannot reach, as if such party be a resident of some other state, will not prevent a decree upon the merits."

The second assignment of error is that the court erred in the decree of February 25, 1895, and in not entering a decree dismissing the plaintiff's bill, first, because, at the time of entering said decree, the lands conveyed by the deeds canceled by said decree were forfeited to the state of West Virginia by the laws thereof. This claim of forfeiture is based on the ground that the record shows that prior to 1842 the two tracts of land of 480,000 acres and of 320,000 acres,

respectively, were forfeited to the commonwealth of Virginia for the nonpayment of taxes thereon; and that the title remained in that state until the formation of the state of West Virginia, in 1863, and then the title vested in the latter. The argument is that the evidence does not show that the proceedings in the tax sale made in 1843, under a decree of the circuit court of Tazewell county, of the said two tracts of land, were regular in all essential requisites. We have with some particularity traced the title to these lands, both before and since the said tax sale, and we are satisfied that by that sale the state of Virginia parted with her title to said lands, and that the same vested in William Cramond, the purchaser, and his successors. As to the regularity of the tax sale made so long ago as 1843, we agree with the learned District Judge Jackson in the able opinion filed in the record:

"It is, however, of little or no moment, at this time, to investigate the history of this title prior to the delinquent sale of 1843. We must, at this late day, presume that the proceedings which resulted in the sale of the land were regular."

By regular conveyances, the title to the 36,750 acres of land in controversy has been transmitted from the purchaser at the tax sale to the plaintiffs below in this cause. This tract of 36.750 acres had formed a part of the two tracts, containing together, as was supposed, 750,000 acres; but when Bouvier made a resurvey of these lands, in 1852, ascertained that there were only 157,500 acres, and divided the same into six tracts, this tract was one of the six tracts so severed; and it has remained a separate and distinct tract, in the hands of its various owners, from that time to the present, and could not be affected by the proceedings in the state court against the Robert Morris tract of 480,000 acres. In this connection, we again quote from the opinion of the court below:

"It does not appear that any proceedings were had directly against the tract in controversy, but, if affected by the proceedings, it is only by reason of the fact that it was originally a portion of one of these two tracts, or both of them. At the threshold of this investigation, we are met with the fact that Robert Morris had conveyed all of his interest in the two tracts long before the institution of these proceedings. In fact, the plaintiffs claim under a deed made by Robert Morris to William Cramond in 1797, more than 80 years before the commissioner instituted his proceedings. This statement of facts puts at rest the right of the state, through her commissioner of school lands, to move against these lands. The title to them had passed out of Morris, and he was no longer chargeable with them for taxes on them after their alienation by him. From all that appears in this case, the lands in the name of others had all been charged with and taxes paid. It does appear that, so far as the tract in controversy is concerned, the plaintiffs, and those under whom they claim, have been assessed with and paid all their taxes on their lands from 1847 down to the institution of this suit, except 1869, and three years during the war, when no taxes were assessed against the land. What right, then, had the commissioner to proceed against the Morris land? I answer, none whatever. The lands in the name of Morris having been long before transferred to others, they were not liable to entry in his name, nor had the state any legal claim against them for taxes assessed in his name. The action of the commissioner was based upon facts supposed to exist, but for which, in reality, there was no foundation, and, as a consequence, was illegal, and of no binding effect upon those who claimed the lands under those who had acquired title thereto more than eighty years before. We

must, therefore, hold that these proceedings were coram non judice, and that the decree of the court declaring a forfeiture was void."

But it is claimed by the defendants that the lands in controversy belonged absolutely to the state of West Virginia, by its purchase of the same at a tax sale in 1871, and that the subsequent sale made by the commissioner of school lands transferred the state's title to the purchasers. We have already seen that the proceedings in the state court by the commissioner of school lands were not against the tract of 36,750 acres in controversy, but against 480,000 acres, for nonentry on the land books. The decree was not for the sale of the land involved in this suit, for nonentry on the land books, but for the sale of a tract of 480,000 acres, which, as such, had long since ceased to exist.

The plaintiffs further contend that the sheriff making the tax sale of the land failed to comply with the law regulating sales of lands delinquent for nonpayment of taxes in such material respects as to render such sale absolutely void. In the argument of counsel, several omissions to comply with the requirements of the statute on the part of the sheriff are presented; but it is unnecessary to consider all of these. The Code of West Virginia (chapter 31, § 31), relative to sales of lands delinquent for nonpayment of taxes, provides that:

"When any real estate is offered for sale as aforesaid, and no person present bids the amount to be satisfied to the state from the sale, the sheriff or collector shall purchase the same on behalf of the state for the taxes thereon, and the interest and damages on the same, and shall make out a list thereof under the following caption: 'List of real estate within the county of ——, sold in the month of (or months of) ——, eighteen hundred and ——, for the nonpayment of taxes thereon for the year (or years) ——, and purchased by the state of West Virginia.' "

Then follow certain provisions as to the form in which such lists shall be made, and then this provision:

"The officer making out the said list shall make oath that it contains a true account of all the real estate within his county purchased by him for the state during the year ——, and return the list with a certificate of the oath attached to the recorder (clerk) of the county within ten days after such sale, who shall within ten days after such return make an accurate copy thereof in a bound book, and transmit the original to the auditor."

The record in the office of the county clerk of McDowell county fails to show affirmatively that the sheriff returned within 10 days after the sale to the clerk of the county a list under oath of the lands sold by him, and purchased for the state of West Virginia. The circuit court held that this failure on the part of the sheriff to comply with the requirements of the statute rendered the tax sale null and void. The court repeated, in the opinion already quoted, what it had previously said in De Forest v. Thompson, 40 Fed. 375:

"That the former owner had a right to call at the recorder's office after the sale of his lands, and demand the production of the sheriff's report for his examination. If he discovered that there was no evidence when the report was filed, he could rest upon his rights, for the statute required the list to be filed within ten days after the sale. It must in some way affirmatively appear, and not be left to presumption, that the sheriff has discharged his duty, which ordinarily, in this class of cases, would be a violent one."

Counsel for defendants contend that the provisions of the statute requiring the sheriff to return the list of sales within 10 days applies where the land is sold to an individual, and not where it is purchased by the state. A careful examination of the statute fails to disclose to us the distinction. It is not found in the language of the statute, and we see no reason for the distinction, and why the return within ten days after the sale is not as important in the one case as in the other.

The decision of the circuit court that the officer making a tax sale must follow strictly the provisions of the statute giving him the power, and that the failure of the sheriff to return the list within the time prescribed by the statute is such an irregularity in the proceedings of the tax sale as to render the sale invalid, is sustained by numerous decisions, state and federal. It is so held by the supreme court of West Virginia in Barton's Heirs v. Gilchrist, 19 W. Va. 223, McCallister v. Cottrille, 24 W. Va. 173, and in other decisions of that court.

In Wilsons v. Bell, 7 Leigh, 22, in which the question was the validity of a sale of land for the nonpayment of taxes, the court said:

"These sales and purchases founded on forfeitures deserve no indulgence from the court. It is therefore the well-settled law that he who claims under a forfeiture must show that the law has been exactly complied with."

In Thacher v. Powell, 6 Wheat. 119, Chief Justice Marshall, delivering the opinion of the court, said:

"That no individual or public officer can sell and convey a good title to the land of another unless authorized to do so by express law is one of those self-evident propositions to which the mind assents without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court."

The same doctrine is laid down in Ronkendorf v. Taylor's Lessee, 4 Pet. 349; Slater v. Maxwell, 6 Wall. 269.

The only remaining assignment of error is that the plaintiffs below had been guilty of laches in asserting their rights. We do not think the doctrine of laches can apply to this case. Counsel for appellants contend that it applies in consequence of the tax sale made in 1871, by which, it is claimed, the state of West Virginia acquired title to the land in litigation, and that no steps were taken by the plaintiffs in the court below to quiet their title for 21 years after such sale. But we have seen that this tax sale was null and void, on account of the failure of the sheriff making the sale to follow strictly the provisions of the statute touching the sale of delinquent lands, and that the title of the plaintiffs was not affected by such sale. It remained in the plaintiffs, and they and their predecessors, the record shows, had paid regularly the taxes assessed against the land for 30 years before, with the exception of the year 1869, and they have paid the taxes every year since 1870. As to the taxes for 1869, the record does not show that they were paid; but, the state having received the taxes for every year since, it is safe to presume

that the taxes for that year were collected also. At any rate, no legal steps have been taken to forfeit the land. The whole tract of 36,750 acres remained on the land books, and was charged with the taxes, which were paid by the plaintiffs, who were nonresidents of the state; and the land was treated by the officers of the state as the land of plaintiffs, and not as the land of the state. Under these circumstances, there was nothing that the plaintiffs were required to do, or that they could have done, to keep clear their title, except to pay the taxes from year to year, which they did.

But it is further contended by appellants that the plaintiffs were guilty of laches in not bringing their suit for eight years after the sale made by McClure, commissioner of school lands, to set aside the deeds made to the defendants for part of the land in controversy. They claim that the plaintiffs were made parties defendant to the proceedings in the circuit court of Wyoming county, in which these lands were decreed to be sold, and that they were duly summoned by order of publication to answer the petition filed in that proceeding. The report of the commissioner of school lands for Wyoming county of the nonentry of the 480,000-acre tract on the land books was made to the circuit court of Wyoming on the 21st day of November, 1881, in accordance with the statute of West Virginia of 1872–73. This act made no provision for summoning persons interested in the land proceeded against. It was held by the supreme court of West Virginia that no claimant or person interested in the lands could be allowed to enter himself on the record as a defendant in such proceeding. McClure v. Maitland, 24 W. Va. 561; Auvil v. Iæger, Id. 583; McClure v. Mauperture, 29 W. Va. 641, 2 S. E. 761; Poteet v. Commissioners, 30 W. Va. 73, 3 S. E. 97; Wakeman v. Thompson, 32 W. Va., Append. 5, 40 Fed. 375.

The act providing for summoning persons having an interest in the land claimed to be forfeited for nonentry was not passed until March 18, 1882, and went into effect June 18, 1882, and it applies to lands "as to which proceedings have not been previously commenced for the sale thereof." Acts W. Va. 1882, c. 95, § 5. The proceedings under which the land in controversy was sold having been commenced before the passage of this act, the order of publication was a nullity. It was made without authority of law. But, apart from the order of publication, if it constituted valid summons, the proceeding in the circuit court of Wyoming county was against a tract of land of "480,000 acres, formerly owned by Robert Morris." Such a summons could not be notice to the plaintiffs that this was a proceeding to sell their tract of land, containing 36,500 acres, which had been a separate tract, clearly defined by metes and bounds, since 1852, on which the taxes had been regularly paid, and which had at no time been subject to forfeiture for nonentry on the land books.

There were other questions made and argued in the brief of counsel for plaintiffs in error, but these do not appear in the assignments of error, and have been disregarded. We find no error in the decision of the circuit court, and the same is affirmed.