VIRGINIA & WEST VIRGINIA COAL CO. v. CHARLES.

(Circuit Court of Appeals, Fourth Circuit.   October 10, 1918.)

No. 1605.

1. APPEAL AND ERROR ☞1008(2)—REVIEW—FINDING OF FACTS BY TRIAL COURT.

In an action at law tried to the court by consent, every finding of fact made by the court, having reasonable support in the evidence and tending to support the judgment, is binding on the reviewing court.

2. CONSTITUTIONAL LAW ☞175, 249, 311—OBLIGATION OF CONTRACTS—RULES OF EVIDENCE—DUE PROCESS—EQUAL PROTECTION.

As there is no vested right in the rules of evidence, the general principle is that the obligation of a contract is not impaired, nor due process of law nor the equal protection of law denied, by a statute making a fact proved presumptive evidence of another, and since the Legislature may create the presumption where it did not before exist, it may by repealing the statute destroy the presumption.

3. TAXATION ☞788(2)—TAX DEEDS—PRIMA FACIE EVIDENCE.

Statutes making tax deeds prima facie evidence of the legality of the proceedings under which they were made have been universally sustained.

4. TAXATION ☞788(2)—TAX DEEDS—PRESUMPTIONS—REPEALING STATUTES.

Despite Code Va. 1904, § 6, *held* that Act March 14, 1914 (Laws Va. 1914, c. 100), repealing Act March 13, 1912 (Laws Va. 1912, c. 235), making deeds recorded prior to 1865 prima facie evidence that all requirements had been complied with, destroyed any rights which a purchaser during the life of the act of 1912 from one claiming under deeds recorded prior to 1865 might have acquired; the Legislature being entitled to change rules of presumption, and the Code section protecting only substantive rights, etc.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. TAXATION ⊚⟶796(1)—TAX DEEDS—COLLATERAL ATTACK.

As a plaintiff in ejectment, claiming under a tax title has the burden of proving such title, an objection to the legality of the tax deeds under which plaintiff claimed was not a collateral attack on the deed.

6. TAXATION ⊚⟶789(4)—ACTION ON TAX TITLE—BURDEN OF PROOF.

A plaintiff in ejectment, who relies on a tax title may be required by defendant in possession to prove due execution of the power under which the deed was made.

7. TAXATION ⊚⟶788(8)—TAX DEEDS—PRESUMPTION.

Both the authenticity and validity of a tax deed may be inferred from long possession under it, with such failure of the alleged defaulting taxpayer to assert his title as to show acquiescence or estoppel.

8. TAXATION ⊚⟶788(8)—PRESUMPTION—VALIDITY OF TAX DEEDS.

Under the Virginia rule that a presumption of the validity of a tax deed does not arise, unless there has been possession for such length of time as would presume any other link in the chain of title, evidence *held* insufficient to warrant a presumption of the validity of a tax sale under which plaintiff deraigned title.

9. TAXATION ⊚⟶773—TAX DEEDS—RECITALS—EFFECT.

The recitals in an ancient tax deed do not prove its authenticity or validity, and are not sufficient to show compliance with the law.

10. TAXATION ⊚⟶615—SALE OF PROPERTY—MANDATORY STATUTE.

The provisions of Act Cong. Jan. 9, 1815, as amended by Act March 3, 1815, providing for sale of land for nonpayment of direct taxes, and for assessment, are mandatory, because designed to protect the taxpayer.

11. TAXATION ⊚⟶855—FORFEITURE OF LANDS—TAX TITLES—"JUST TITLE"—"JUST CLAIM."

Plaintiffs in ejectment, who asserted that the title of the original owner of land west of the Allegheny Mountains had been forfeited to the state, and that their predecessors took title under Act Va. 1842, § 3, *held* not entitled to recover; their predecessors not having "just title," which means a title good against all the world, or a "just claim," which means a claim that would be good, but for the paramount right forfeited to the state, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Just Claim; Just Title.]

12. TAXATION ⊚⟶855—FORFEITURE OF LAND—PRESUMPTION.

There is no presumption of forfeiture of land to state for nonpayment of taxes.

13. TAXATION ⊚⟶851—NONPAYMENT—LAND—STATUTE DECLARING FORFEITURE—PUBLICATION.

While ordinarily provisions for the publication of statutes are directory, yet as the only notice to defaulting taxpayers of the impending forfeiture of their land under Act Va. 1803 (2 Rev. Code, 1819, p. 528), was the publication of the statute provided for in section 2, no forfeiture can be declared where such publication was not had as provided.

14. ADVERSE POSSESSION ⊚⟶16(3)—LAND IN STATE OF NATURE.

It is settled in Virginia that there can be no adverse possession of land in a state of nature, but actual possession of part of a single tract, under a junior patent, extends to the entire patent, including the portion still in a state of nature.

15. ADVERSE POSSESSION ⊚⟶101—CONSTRUCTIVE POSSESSION—ADJOINING PARCELS.

Where several parcels are granted by different patents to the same person, and are so situated that they are covered by an unbroken boundary, they are regarded as forming one tract, and actual adverse possession, for the statutory period, of any portion of the one tract thus formed from several extends to the entire boundary, and perfects the title to all separate tracts so consolidated.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**16. ADVERSE POSSESSION ☞106(4)—EFFECTIVE POSSESSION—LIENS.**

Liens existing on land are lost by possession for the statutory period adverse to the owner, so the tax lien of the state is destroyed where an adverse occupant holds the land for the statutory period, though forfeiture be declared before the adverse occupancy ripened into title.

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action of ejectment by the Virginia & West Virginia Coal Company against Green Charles and others. There was a judgment for defendant Charles (251 Fed. 83), and plaintiff brings error. Affirmed.

S. B. Avis, of Charleston, W. Va. (J. L. Jeffries, of Norfolk, Va., on the brief), for plaintiff in error.

Barnes Gillespie and William H. Werth, both of Tazewell, Va. (E. M. Fulton, of Wise, Va., G. W. St. Clair, of Tazewell, Va., C. C. Burns, of Lebanon, Va., G. E. Penn, Jr., of Bristol, Va., Hager & Stewart, of Ashland, Ky., Chase & Daugherty, of Grundy, Va., and Chapman, Peery & Buchanan, A. S. Higginbotham, and Greever, Gillespie & Divine, all of Tazewell, Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. On January 14, 1915, the Virginia & West Virginia Coal Company commenced this action of ejectment against Green Charles and about 1,250 other defendants for 146,109¼ acres of land called the "Hagan Survey" or "Pearson Survey," excepting from its claim, however, 11 described tracts lying within the boundaries set out. On the plea of not guilty the District Court by consent tried without a jury the issue of title to the particular tract claimed by the defendant Green Charles, containing 673.52 acres, and found in favor of the defendant.

The plaintiff's claim of title was as follows:

(1) Patent, November 16, 1795, from state of Virginia to Richard Smyth and Henry Banks, for 200,000 acres.

(2) Tax deed, November 3, 1823, from W. D. Taylor, collector of direct taxes of United States, to Wm. Lamb, of 200,000 acres of Richard Smyth and Henry Banks.

(3) Will of Wm. Lamb, probated March 5, 1827.

(4) Deed, Lamb's executor to Joseph Hagan and Sarah Purcell.

(5) Deed, February 7, 1839, Sarah Purcell to James Culbertson.

(6) Decree of circuit court, October 6, 1856, in case of Joseph Hagan v. James Culbertson, directing commissioners to convey to Hagan interest of Culbertson.

(7) Deed, August 6, 1857, Morrison, commissioner, to Joseph Hagan.

(8) Deed, April 4, 1871, Joseph Hagan to Patrick Hagan.

(9) Deed, November 8, 1883, Patrick Hagan to Frederick Pearson.

(10) Tax deed, February 17, 1905, Dennis, clerk, to Buchanan Company of lands bought by state for delinquent taxes of Frederick Pearson.

(11) Deed, Buchanan Company to Virginia & West Virginia Coal Company, April 2, 1914.

Defendant's claim of paper title was as follows:

(1) Patent, May 1, 1861, state of Virginia to Silas Ratliff.

(2) Deed, December 8, 1896, Ratliff's heirs to Margaret Justice.

(3) Deed, May 24, 1910, John W. and Margaret Justice to Green Charles.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant also claimed by adverse possession.

[1] Every finding of fact made by the District Court, having reasonable support in the evidence and tending to support the judgment, is binding on this court.

We consider, first, whether any error of law entered into the finding of the District Court that the plaintiff failed to connect itself with the patent of 1795 to Richard Smyth and Henry Banks. There was no sufficient extraneous evidence of the execution of a valid tax deed by Taylor, collector, to Wm. Lamb. To make this connection it was necessary to establish the validity of the tax deed of 1823 to Wm. Lamb; and on this point it is earnestly contended that under the following statute of Virginia the tax deed is itself prima facie evidence that all provisions of law requisite to its validity were complied with:

"An act to prescribe the effect as evidence to be given to deeds recorded prior to the year 1865. Approved March 13, 1912.

"1. Be it enacted by the General Assembly of Virginia, that in every action at law or suit in equity, in which it shall appear that a deed or other writing, which constitutes a part of the chain of title to any lands has been made by an officer or other person, purporting to act under the provisions of any statute or decree, authorizing or providing for a sale or conveyance of real estate, and that said deed was duly recorded in the proper clerk's office prior to the year eighteen hundred and sixty-five, and that the record or evidence, or some parts thereof of the proceedings under or pursuant to which such sale, deed or other writing was made, has been lost or destroyed, or cannot be produced, the said deed or other writing, or a certified copy thereof, taken from said record, shall be prima facie evidence of the fact that all provisions and requirements of such statute or decree were duly complied with in the making of such sale, deed or other writing as well as the power or authority of such officer or other person to make and execute the same, and of the due execution thereof by him." Laws 1912, c. 235.

A repealing statute was passed March 14, 1914, in these words:

"Be it enacted by the General Assembly of Virginia, that an act * * * to prescribe the effect as evidence to be given to deeds recorded prior to the year eighteen hundred and sixty-five, approved March 13, 1912, be and the same is hereby repealed." Laws 1914, c. 100.

The repeal did not take effect until ninety days after its enactment. The conveyance of Buchanan company was made to plaintiff April 2, 1914, after the repealing statute was enacted, but before it went into effect. The argument is that the act of 1912 conferred a substantive right on those claiming under the old deeds referred to in the statute to such deeds as prima facie valid, and that the repealing statute could not have the effect of taking away that substantive right. To sustain this position, the plaintiff relies on section 6 of Code of 1904, which provides:

"No new law shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new law takes effect; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings; and if any penalty, forfeiture, or punishment be mitigated by any provision of the new law, such

provision may, with the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."

[2] As there is no vested right in rules of evidence, the general principle is that the obligation of a contract is not impaired, nor due process of law nor the equal protection of law denied by a statute making a fact proved presumptive evidence of another. This statement of the rule and its limitation has been adopted by the Supreme Court:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed." Mobile, etc., R. R. Co. v. Turnipseed, Adm'r, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

[3] Statutes making tax deeds prima facie evidence of the legality of the proceedings under which they were made, and other like statutes, have been universally sustained. Marx v. Hanthorn, 148 U. S. 172, 13 Sup. Ct. 508, 37 L. Ed. 410; Turpin v. Lemon, 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70; Leigh v. Green, 193 U. S. 79, 24 Sup. Ct. 390, 48 L. Ed. 623; Mobile, etc., R. R. Co. v. Turnipseed, Adm'r, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; Bailey v. State of Alabama, 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191; Lindsley v. National Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Reitler v. Harris, 223 U. S. 437, 32 Sup. Ct. 248, 56 L. Ed. 497; Meeker v. Lehigh Valley R. R. Co., 236 U. S. 412, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691.

[4] Since the Legislature may create the presumption where it did not before exist, it may by a repealing statute destroy the presumption, and thus deprive of its aid persons who entered into contracts relying on the statutory presumption to establish the claims acquired.

Applying these rules, if the action had been tried while the act of 1912 was in force, it would not have availed the defendant in possession of the land in dispute under a junior grant to say that he took his grant and paid the purchase money after ascertaining that no evidence of the validity of the proceedings under which this land was sold for taxes could be produced. On the other hand, the plaintiff acquired the rights of the grantee under the tax deed charged with notice that the presumption created by the act of 1912 was a mere rule of evidence, that it did not inhere in the title deed, and that in purchasing it took the risk of the destruction of the presumption as evidence by the legislative authority which created it.

The only serious question therefore on this branch of the case is, Was the presumption created by the act of 1912 saved to the plaintiff by section 6 of the Code of 1904, above quoted, notwithstanding the repeal of the act of 1912 by the act of 1914?

"Rights accrued and claims arising under the former law" protected by section 6 from the effect of a repeal, are substantive rights and

claims. Rules of evidence are "proceedings," as distinguished from such rights and claims, which, so far from being protected from the effect of the repeal, are expressly required to conform, as far as practicable, to the law as it remains after the repeal. After a review of the authorities the application of the statute is thus limited in Crawford v. Halsted, 20 Grat. (Va.) 211:

> "The court held that the mode of conducting a suit, or the rules of practice regulating it, are not the subject of vested rights. It might as well be contended that the party had a right to have his action tried in the court under the same organization as it existed when the suit was instituted, or by the same number of jurors, as to contend that the rules of evidence, or form of proceeding, the form of the plea and answer, may not be changed so as to affect all future trials, whether of actions then commenced or subsequently instituted. If the law is objectionable as violating vested rights then pending, why not equally so as to all causes of action then existing? The mere fact of having instituted a suit does not give any additional vested rights. It is the demand or claim that cannot be interfered with by legislative enactment."

Philips v. Commonwealth, 19 Grat. (Va.) 485, relied on by plaintiff, may be distinguished by the fact that the prosecution had been commenced at the time of the repeal. Discussion of the distinction would not be pertinent, however, since this court follows the latest construction of the statute by the state court, based as it is on the clearest principle and reasoning.

Even if it be assumed that the right to a rule of evidence was intended to be embraced within the protection of section 6, that statute could not limit or control the plainly expressed or implied contrary intention of subsequent legislation; and we think the act of 1914 does clearly imply a contrary intention. If it does not then it has no substantial meaning. The act of 1912 was general in its terms and conferred upon claimants under the old deeds the benefit of the presumption whether original holders or their grantees or heirs or devisees, without distinction between those who acquired claims before its passage and those who acquired them after its passage. One who like the plaintiff purchased such a claim after the act was passed took only the rights of his grantor; and these embraced no vested right to the rule of evidence provided by the statute. There is no ground whatever for the court to infer that the Legislature intended to make subsequent grantees a favored class. To hold that the repeal was intended to affect only those who might acquire title or claims after the repeal would be to make the repeal of no practical effect, for there would be few, if any, transfers of such titles or claims when the presumption in their favor would be destroyed by the transfer. Looking at the matter in a plain way, the legislation on its face shows that the intention of the Legislature was to take away by the repeal the presumption in every case where it had been conferred by the act of 1912. The Legislature, having in prominent view the hardship sometimes arising from the difficulty of proving the execution of the old deeds referred to in the act, and the authority under which they were made, passed the statute of 1912. At the next session the Legislature, upon reconsideration, having in prominent view the hardship resulting from the act of 1912 in unsettling the titles of those who were claiming adversely to the

old deeds, unmistakably intended to make the repeal coextensive with the act repealed—to restore the rule of evidence in its full scope and application just as it was before the act of 1912. This being the manifest intention of the repealing act, the saving provisions of section 6 have no application. In Town of Danville v. Pace, 25 Grat. (Va.) 1, 18 Am. Rep. 663, it was held that construing sections 5 and 6 together the latter was not applicable when inconsistent with the manifest intent of the Legislature. Great N. Ry. v. U. S., 208 U. S. 452, 28 Sup. Ct. 313, 52 L. Ed. 567.

We conclude (1) that section 6 saves from the operation of a repealing statute substantive claims and rights, but has no application to a change by repeal of a mere rule of evidence; and (2) that it could not bind a future Legislature which expressed a contrary intention in a repealing statute.

[5, 6] The plaintiff next contends that, without regard to the act of 1912, the court should have admitted in evidence the tax deed as valid because it could not be attacked collaterally by the defendant who claimed under an independent title. The fallacy is in assuming that the defendant had to make any attack on the deed. The burden was on the plaintiff to prove its title, and to do this it was necessary to prove that the tax title, one of its links, was executed in compliance with law. Reusens v. Lawson, 91 Va. 226, 21 S. E. 347; Boom v. Simmons, 88 Va. 259, 13 S. E. 439; Sulphur Mines Co. of Va. v. Thompson's Heirs, 93 Va. 293, 25 S. E. 232; Marx v. Hanthorn, 148 U. S. 172, 13 Sup. Ct. 508, 37 L. Ed. 410.

An objection to the legality of a tax deed under which plaintiff claims is not a collateral attack on the deed. Reusens v. Lawson, 91 Va. 226, 21 S. E. 347. When any right is claimed under a naked power, the burden is on the claimant to prove the due execution of the power. One in adverse possession of land may demand strict proof of the execution of the power. Sulphur Mines Co. of Va. v. Thompson's Heirs, 93 Va. 293, 25 S. E. 232.

The case of Munroe v. Winegar, 128 Mich. 309, 87 N. W. 396, and other cases relied on by plaintiff, do not apply, since they merely hold the familiar doctrine that tax sales, under judicial decrees, can only be attacked by direct proceedings to set aside the decree.

[7, 8] It is true that both the authenticity and the validity of a deed purporting to be made under a naked power, including even a tax deed, may be inferred from long possession under it with such failure of the alleged defaulting taxpayer to assert his title as to show acquiescence, or estoppel. Williams v. Conger, 125 U. S. 397, 9 Sup. Ct. 793, 33 L. Ed. 201; Fulkerson v. Holmes, 117 U. S. 389, 6 Sup. Ct. 780, 29 L. Ed. 915; Lenning's Ex'r v. White, 20 S. E. 831, 1 Va. Dec. 873; Bowe v. City of Richmond, 109 Va. 254, 64 S. E. 51; Caruthers v. Eldridge's Ex'r, 12 Grat. (Va.) 670; Nowlin v. Burwell, 75 Va. 551; Cook et al. v. Lasher et al., 73 Fed. 701, 19 C. C. A. 654; Van Gunden et al. v. Virginia Coal & Iron Co., 52 Fed. 838, 3 C. C. A. 294; Wilson v. Snow, 228 U. S. 217, 33 Sup. Ct. 487, 57 L. Ed. 807, 50 L. R. A. (N. S.) 604. The authorities are in some confusion as to what possession or acts of ownership or acquiescence by the former

owner is necessary to give the presumption of validity to an ancient tax deed, or other deed purporting to be executed under a naked power. The rule in Virginia seems to be that the presumption does not arise unless there has been possession for such length of time as would presume any other link in the chain of title. Jesse v. Preston, 5 Grat. (Va.) 130; Allen v. Smith, 1 Leigh (Va.) 231. We do not think, however, the plaintiff's proof measures up even to the most liberal rule laid down in any authority. The only evidences of possession were that Joseph Hagan went to Tazewell county in 1833 and had surveyed some large tracts of land including the land in dispute lying entirely or mainly in Buchanan county; that in 1837 commissioners in the partition suit of Joseph Hagan v. Sarah Purcell made an actual survey and assigned one hundred thousand acres to each party; that in 1842 or 1843 Collins who was then living on the land agreed to hold it for Culbertson; and that about the same time Hagan placed one Looney on another portion of the land as his agent. There was nothing to show the extent of their possessions or their duration after 1855, or that either Collins or Looney ever acted in such way as to indicate that they were agents for Culbertson or Hagan. The presumption that a possession once begun continues is overcome by the fact that with all the diligence shown by the plaintiff not a particle of evidence was adduced of any act of possession for more than 60 years after the alleged agreement of Collins and Looney to hold for the plaintiff's predecessors in title.

The evidence, it is true, tended to show that neither Banks nor Smyth, nor any one under them, had set up any claim to the land since the tax sale. But there was no proof of any affirmative acts or expressions of recognition of the validity of the tax sale by the former owners. It is not evident whether their inaction was due to indifference because of low estimate of value or to acquiescence in the tax sale. We agree with the District Court, therefore, that there was no such evidence of possession or acquiescence by the former owners as to warrant the presumption of the validity of the tax sale.

[9] The recitals in an ancient tax deed do not prove its authenticity or validity. Sulphur Mines Co. of Va. v. Thompson's Heirs, 93 Va. 293, 25 S. E. 232. A tax deed made under judicial authority as in Machir v. Funk, 90 Va. 284, 18 S. E. 197, stands on a different footing under the familiar rule that all presumptions are to be indulged in favor of conveyances and other proceedings of a court of competent jurisdiction. Minor's Tax Titles, 123. But even in such cases the Virginia court has held that the recitals of the deed are not sufficient to show compliance with the law. Miller v. Williams, 15 Grat. (Va.) 213; Walton v. Hale, 9 Grat. (Va.) 194.

[10] The conclusion that there are no presumptions in favor of its tax deed, left the plaintiff's claim that it was valid dependent upon proof of compliance with tax law under which the sale was made and the deed executed. This proof was lacking in several particulars: There was no proof of the assessment; nor of the published notice of the assessment to persons concerned required by sections 13 and 14 of the act of 1815 (Act Jan. 9, 1815, c. 21, 3 Stat. 169); nor of ad-

vertisement that the taxes were due and payable under section 26; nor of the notification of the taxes due by advertisement in one newspaper under section 28; nor filing of the list of property sold in the clerk's office, with a view to its redemption by the owner, required by section 30.

The plaintiff undertook to prove that the tax sale had been advertised as required by sections 28 and 29 of Act Jan. 9, 1815, as amended by Act March 3, 1815 (3 Stat. 230, c. 91). The amendment requires that the advertisement of the tax sale shall be by publication "at least once a week for eight weeks in succession in every newspaper within the state in which the laws of the United States are by public authority published." In support of the tax deed, plaintiff contended that the Richmond Enquirer was the paper, and the only paper, in which the statute required the advertisement of sale, and offered evidence tending to prove that the sale was advertised in that paper. Whether the Richmond Enquirer was the proper medium of advertisement was a mixed question of law and fact, fully discussed in the opinion below. It seems to us there can be no doubt that the District Judge correctly construed the statutes. Designation of the Enquirer as the only newspaper, even one of the newspapers, "in which the laws of the United States are by public authority published," was left by the evidence at least in great doubt, and therefore the conclusions of fact by the District Judge against the plaintiff are not subject to review by this court. This makes immaterial the question whether the advertisement was in the proper form. The statutory provisions referred to were mandatory because designed to protect the taxpayer, and therefore proof of compliance with them was necessary to the validity of the tax deed.

[11] The plaintiff next claims title by operation of law under the familiar section 3 of the act of 1842 (Acts 1841–42, c. 13). The contention is that, since neither Smyth and Banks, nor those claiming under them, were assessed with taxes after 1832, therefore all their title to the land was forfeited to the state; that Joseph Hagan, Sarah Purcell, and James Culbertson were persons having "just claim," if not "just title," to the land under the Smyth and Banks grant; that they paid the taxes which the direct claimants under the Smyth and Banks patent should have paid; and that therefore all title derivative from that patent was vested in them, and hence in the plaintiff, their grantee.

The act of 1842 provides:

"And be it further enacted, that all the right, title and interest, which shall be vested in the commonwealth in any lands or lots lying west of the Allegheny Mountains, by reason of the nonpayment of the taxes heretofore due thereon, or which may become due on or before the first day of January next, or of the failure of the owner or owners thereof to cause the same to be entered on the books of the commissioner of the proper counties, and have the same charged with taxes according to law, by virtue of the provisions of the several acts of assembly heretofore enacted, in reference to delinquent and omitted lands, shall be and the same are hereby absolutely transferred to and vested in any person or persons (other than those for whose default the same may have been forfeited, their heirs or devisees), for so much as such person or persons may have just title or claim, legal or equitable, claimed, held or derived from or under any grant of the commonwealth, bearing date previous to the first day of January, eighteen hundred and forty-

three, who shall have discharged all taxes, duly assessed and charged against him or them upon such lands, and all taxes that ought to have been assessed or charged thereon, from the time he, she or they acquired title thereto, whether legal or equitable; Provided, that nothing in this section contained, shall be construed to impair the right or title of any person or persons who shall bona fide claim said land by title, legal or equitable, derived from the commonwealth, on which the taxes have been fully paid up according to law, but in all such cases, the parties shall be left to the strength of their titles respectively."

Joseph Hagan and Sarah Purcell were not those for whose default the land was forfeited nor their heirs or devisees. Grantees of those in default are not, in terms, excluded by the statute from the general privilege of acquiring title by payment of taxes; and the express exclusion of heirs and devisees indicates that it was not the intention to exclude grantees. It is true that in Wild's Lessee v. Serpell, 10 Grat. (Va.) 405, Levasser v. Washburn, 11 Grat. (Va.) 572, and Atkins v. Lewis, 14 Grat. (Va.) 30, the Virginia court does refer to a subsequent grantee as a person who may obtain title by payment of the taxes, but the court does not decide that only a claimant under a patent different from that under which the forfeiture occurred can acquire title by payment of the taxes. Where the point was expressly involved the West Virginia court in construing a similar statute held that the grantee of the defaulting taxpayer may acquire the state's title by payment of the taxes. State v. Collins et al., 48 W. Va. 64, 35 S. E. 846.

But even under this construction of the statute, we do not think the plaintiff can claim the benefit of it, because it failed to prove either a "just title" or a "just claim." A just title means a title good against all the world. We are unable to find any definition of a just claim by the courts of Virginia or West Virginia. It evidently means something more than a mere asserted claim. Having regard to the context, it must mean at least a claim to the land which would be good under the same patent, but for the paramount right forfeited to the state, or an adverse right acquired under some other patent—a claim susceptible of proof under some patent from the state. As we have seen, the plaintiff was not able to show that Culbertson and others who paid the taxes derived title under any grant from the state, and therefore they could not derive title by payment of the taxes as the holders of a "just title" or a "just claim," under the act of 1842.

The plaintiff must fail under its own evidence of title.

[12, 13] The defendant, in addition to denial of plaintiff's title, set up two affirmative defenses: First, that the land was forfeited to the state either under the act of 1803 or under the act of 1814, and so was not subject to the federal tax of 1816; that therefore the grant of 1861 under which he claims was good against the senior grant of 1795, all rights under the latter having been forfeited.

There is no presumption of forfeiture. Under the act of 1803 (2 Rev. Code, 528), land was forfeited to the commonwealth and made subject to location when the taxes remained unpaid for more than two years. Section 2 of the act required publication of the statute by the auditor in the "Gazette of the Public Printer" and in some newspaper published at the seat of the general government. The general

rule is that provisions for the publication of statutes are directory, and failure to comply with them does not impair the validity of the statute. Endlich on the Interpretation of Statutes, § 432. But in this instance the only notice to the defaulting taxpayer of the impending forfeiture of his land provided by the statute was publication of the statute. The publication was an act not only intended, but apparently necessary, for the protection of the taxpayer. It seems to us, therefore, that contrary to the general rule publication of the statute should be held necessary to a forfeiture, and that no presumption should be indulged that the auditor published it. The like claim of the defendant of alleged forfeiture under the act of 1814 depends upon the issue of fact as to the proper assessment of the land which was found by the District Judge adversely to the claim of forfeiture, and is therefore not reviewable here.

We do not understand that the defendant questions the finding of the District Court that under the proof he cannot rely on outstanding title in Moorehouse, Ralph, or Banks, or any other third person.

[14, 15] The defendant's claim of title by adverse possession presents a difficult question which arises in this way: As early as 1851 Silas Ratliff, whose title defendant acquired, established his residence in the vicinity of the land in dispute, using a number of acres around his dwelling for agricultural purposes. This actual possession embraced a portion of a tract of 15 acres granted to Ratliff in 1854. He held this actual possession until his death in 1896. On May 1, 1861, he obtained a patent for 595 acres adjacent to the 15-acre grant and overlapping a portion of it. On the same day, May 1, 1861, he obtained a patent for 673 acres, including the land in dispute. No part of this last patent adjoined the tract of 15 acres of which Ratliff had actual possession; but in 1862 a patent was issued to him for a tract of 163 acres between the 595 acres and the land in dispute. Thus the land in dispute was connected in 1862 by unbroken boundaries covered by the color of title of junior patents from the state with the small tract in Ratliff's actual possession from 1851 to 1896. The question is whether this possession in contemplation of law extended to and perfected his title to the land in dispute, assuming that there was no actual possession for that period shown under the senior patent. The stay law was operative in Virginia until January 1, 1869, but Silas Ratliff's possession remained unbroken until his death in 1896, and if the adverse possession relied on by defendant extends to the land in dispute it was perfected before the commencement of the action on January 14, 1915.

It is settled in Virginia that there can be no adverse possession of land in a state of nature. Whealton v. Doughty, 112 Va. 649, 72 S. E. 112. But actual possession of a part of a single tract under a junior patent extends to the entire tract, including the portion still in a state of nature. When several tracts are granted by different patents to the same person, and are so situated that they are covered by an unbroken boundary, they are regarded as forming one tract, and actual adverse possession for the statutory period of any portion of the one tract thus formed from several extends to the entire bound-

ary and perfects the title to all separate tracts so consolidated into one. In Overton's Heirs v. Davisson, 1 Grat. (Va.) 216, 229 (42 Am. Dec. 544), the rule is thus stated:

"And, moreover, that upon the question of adversary possession, it is immaterial whether the land in controversy be embraced by one or several coterminous grants of the older patentee, or one or several coterminous grants of the younger patentee; in either case the lands granted to the same person by several patents must be regarded as forming one entire tract."

The same rule is laid down in Hutchinson on Land Titles, § 416; Virginia & Tennessee C. & I. Co. v. Fields, 94 Va. 102, 26 S. E. 426; Roller v. Armentrout, 118 Va. 173, 86 S. E. 906; Sharp v. Shenandoah Furnace Co., 100 Va. 27, 40 S. E. 103; Rich v. Braxton, 158 U. S. 375, 15 Sup. Ct. 1006, 39 L. Ed. 1022.

It is true that in the cases cited the patented land held to be covered by the adverse possession was immediately contiguous to the tract on which there was actual possession. But the principle is the same, namely, that the possession of a part covers all lands embraced in a common boundary under patents from the state.

The case of Harman v. Ratliff, 93 Va. 249, 24 S. E. 1023, is distinguished by the fact that, while the possession proved was on a tract contiguous to one of the granted tracts, it was an entirely independent tract not proved to be embraced in any of the patents. The distinction may be somewhat artificial, but we perceive no other ground of reconciliation of this case with the other cases cited.

The last question is whether Ratliff's adverse possession was broken by reacquisition by the state of the entire tract covered by the patent of 1795. The 200,000 acres of land embraced in the patent of 1795 was sold on October 12, 1886, for delinquent taxes assessed against Frederick Pearson for the past years, beginning February 1, 1876, and bought by the state. The state, by W. L. Dennis, clerk, conveyed on February 17, 1905, to Buchanan Company, from which plaintiff derived title.

Plaintiff's position is that the alleged adverse possession set up by defendant had not matured in 1876, when the state's lien for taxes attached, that it could not thereafter run against that lien, and that therefore the conveyance of the state was not limited to the title of Pearson at the date of the sale in 1886, but carried whatever title he had in 1876, when the lien first attached.

Under the tax laws of Virginia, as is conceded by plaintiff's counsel, the lien for taxes bears only upon the title of the person against whom the taxes are assessed and the tax title carries only his title. As the state's lien was limited to Pearson's title and its conveyance carried nothing more, and plaintiff was unable to show that Pearson had title, it is not in a position to assert a valid lien in favor of the state, defeating defendant's assertion of title by adverse holding by another under whom he claims.

[16] But waiving that, and assuming that Pearson was the real owner and that the state's lien for taxes was good against the world, the question is: Was the lien for taxes assessed against the land as Pearson's, which accrued in 1876, defeated by the adverse possession of Ratliff beginning in 1869? Obviously no statute of limitation ran

against the state's lien in favor of Pearson, or any one claiming in privity with him. Cogent reasons might be stated in support of the validity of the state's lien against an adverse possession of even a stranger to Pearson, begun, but not consummated, at the time the lien attached. We are relieved of the consideration of the question, however, by the decision of the Supreme Court of Virginia in McClanahan's Adm'r v. Norfolk & W. Ry. Co., 123 Va. ——, 96 S. E. 453. There the court held that liens existing on land were lost by a possession for the statutory period adverse to the true owner, on the ground that the liens against the true owner were dependent on his title, that adverse possession conferred, not a derivative, but an independent paramount, title, and that therefore, when the paramount title matured by adverse possession, the former title was lost, and with it fell the lien, which was dependent upon it. The court quoted with approval the opinion of Judge McDowell in this case, laying down the rule stated as applicable to a lien for state taxes.

We must therefore sustain the conclusion of the District Court that title by adverse possession set up by the defendant is good against the conveyance of the state to the Buchanan Company, based on the sale under its lien for taxes.

Other questions concerning the admission and rejection of documentary evidence are discussed in the enlightening opinion of the District Judge, and in the comprehensive arguments of counsel. Without respect to these questions, the conclusions we have stated are decisive of the case.

Affirmed.